## Lutz v. Scranton, Appellant.

140

Argued March 6, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Jerome K. Barrett,* Assistant City Solicitor, and *Jerome I. Myers,* City Solicitor, for appellant.

*Walter L. Hill, Jr.,* with him *Edward W. Warren,* of *O'Malley, Hill, Harris & Harris,* for appellee.

OPINION BY STADTFELD, J., May 8, 1940:

This is an action in trespass brought by Lena Lutz against the City of Scranton to recover damages for personal injuries sustained by a fall from the topmost step of a footbridge, which was alleged to have been in a defective and unsafe condition.

The City of Scranton maintained a footbridge spanning the right of way of the Delaware, Lackawanna and Western Railroad Company at the intersection of the railroad with Myrtle Street, to enable pedestrians to cross the railroad line above the grade. The bridge consisted of an iron framework supporting concrete stairways leading to and from each end of the flat concrete footway comprising the central span of the bridge. The steps of the stairways were covered with sheet metal treads attached and fastened to the concrete of the steps by means of expansion bolts.

On December 18, 1937, about 7:00 o'clock in the evening, plaintiff, while on her way from her home on Myrtle Street to visit her daughter, proceeded up the southeasterly stairway of the bridge and across the level footway. When she had reached the topmost step of the northwesterly stairway, she placed her foot on the metal tread thereof. The tread tipped forward under plaintiff's weight, and she fell down the stairway. Plaintiff's grandson, Henry Weller, who preceded her by a few feet, turned around and saw her in the act of falling.

The evidence discloses that the concrete riser, or vertical section of the stairstep, supporting the top step at the northwesterly end of the footway, had cracked and broken away from under the sheet metal

tread. The expansion bolts holding the tread to the step had loosened, some having fallen out, and the metal tread was loose. This condition had existed for upwards of six months prior to the date of the accident on December 18, 1937.

The issue was tried before LEWIS, J., and the jury brought in a verdict for the plaintiff in the amount of $5000. The court discharged a rule for judgment n. o. v. and for new trial, conditioned on the plaintiff remitting $2500 of the verdict. This was done and judgment was entered on the verdict in the sum of $2500. This appeal followed.

One reason presented in this appeal for reversing the judgment of the court below, relates to appellee's failure to aver and prove that any notice in writing of her claim, stating the facts briefly, was given to the appellant, City of Scranton, within six months from the date of the accident complained of, as required by the Act of July 1, 1937, P. L. 2547, 53 PS 2774. This Act was in effect when the appellant sustained her injury on December 18, 1937. On March 2, 1938, she brought suit against the city on this cause of action by filing her praecipe for summons and sworn statement of claim. Summons was issued the same day and on the following day, March 3d, the sheriff served the writ together with a copy of the statement of claim on the appellant, and on the following March 10th, the City Solicitor entered a general appearance in the action for the appellant, so that this case was at issue less than three months after the accident.

In enacting the statute the legislature clearly intended to provide municipalities with a safeguard against the loss of an opportunity to make timely investigation and thus avoid the difficulty of defending against stale and fraudulent claims.

The question here raised is whether or not appellee complied with the Act by filing her sworn statement of claim and serving it within three months after the

injury as the record on its face indicates. On this issue the court below in its opinion stated: "In the instant case the City had full notice when the plaintiff's statement was served upon it within a period of three and one-half months after the accident. The plaintiff's statement gave to the defendant city more information than is contemplated under the Act of Assembly. The law does not require one to perform a useless thing. To impale this plaintiff for failure to give notice as required under the Act of Assembly when it already had sufficient notice in the filing of the plaintiff's statement of claim would be a denial of justice. ......"

We are in entire agreement with the view of the court below. Such a holding does not deprive a municipality of one iota of the protection that the Act was designed to give. A proper statement of claim gives to the municipality considerably more information than is contemplated by the statute. The statement has the added virtue of having been made under oath. This Act is to be construed as far as possible so as not to change or impair rights, liabilities or principles of law as they existed prior to its enactment. In order to justify binding instructions or the entering of judgment n. o. v., this Act would have to be construed to require the plaintiff in this case to aver and prove not only that notice was given within six months of the accident but to aver and prove that notice was given prior to suit. This Act does not expressly create a condition precedent. It contains no words indicating an intent to create a condition precedent, nor does it contain any words indicating any intent to impair the right of action.

Appellant raises the question as to whether the evidence justified the learned trial judge, LEWIS, J., in submitting to the jury the issue of notice to appellant of the existence of the defect in the topmost step of the westerly side of the bridge.

Plaintiff's grandson, Henry Weller, testified that to his knowledge the metal tread over the top step had been loose and the concrete under it broken for two weeks prior to the accident. He also stated that he examined the step on the day following the accident and found the tread to be even less firm and the concrete crumbled away. Plaintiff's son, Edward Lutz, testified that the concrete had been coming out from under the top step for a year or two prior to the accident and that the metal plate had been loose for some time prior thereto, so that stepping upon it caused it to tilt and make a noise. Carl Bising, who was an employee of the Erie Railroad and made frequent trips across the bridge, gave substantially the same testimony. On the basis of such testimony, the question of appellant's constructive notice of the defect was properly for the jury: *Jeske v. City of Pittsburgh,* 110 Pa. Superior Ct. 274, 168 A. 323.

James B. Hawley, called as a witness by defendant, had been employed by the city to take care of the bridges maintained by it. He testified that his inspection of this particular bridge in April or May of 1937, at least seven months prior to the accident, revealed that the concrete had broken out in the riser supporting the top step and that some bolts had come out of the metal tread over it. He further stated that following his inspection, he recommended that the bolts be replaced and that the bridge be scraped and painted. Cyrus M. Roberts, called by the defendant, was employed as an engineer by the city. His testimony as to the condition of the metal tread and riser of the topmost step prior to the accident, was substantially the same.

The testimony of these witnesses was sufficient to sustain a finding by the jury that the city had actual notice of the condition of the metal tread on the top step of the bridge and of the concrete riser supporting it.

Appellant contends, however, that the appellee was

guilty of contributory negligence by reason of the fact that she had passed over the defect of the bridge in question on numerous occasions. It is urged, therefore, that appellee was chargeable with notice of its existence and legally bound to use means of avoiding it. Appellee's testimony stands alone as evidence of the circumstances of her fall. She testified that as she walked over the bridge in a westerly direction, "it was a little dark"; that she watched where she was stepping and noticed nothing wrong with the metal plate before stepping on it. It may readily be understood that the danger of the defect arising from the crumbling concrete of the riser below the top step was not apparent to appellee upon her approach in a westerly direction toward that step. Moreover, the absence of the expansion bolts in the metal tread was not likely to be noticed in walking under conditions of partial darkness. As stated by this court in *Graham v. Reynoldsville Borough,* 132 Pa. Superior Ct. 296, 298, 200 A. 681: "It is only when the danger is so obvious that an ordinarily prudent person would regard it as a risk or hazard, and therefore avoid it, that it could be said as a matter of law that the person taking a chance is guilty of contributory negligence." The question of appellee's contributory negligence, as well as the question of appellant's negligence, was a matter properly to be submitted to the jury. Since the jury found a verdict in favor of the plaintiff, we have considered the evidence in the light most favorable to her, and have come to the conclusion that the learned court below properly treated this feature of the case.

Appellant further complains of the trial judge's action in permitting Dr. Van Dyke, appellee's physician, to testify that in his opinion appellee suffered pain, and relies upon *Littman v. Bell Telephone Co. of Pa.,* 315 Pa. 370, 172 A. 687, as authority for a reversal of the judgment. In that case the physician testified that plaintiff suffered "the pain that he complains of"; in

the instant case the witness merely testified that plaintiff suffered pain. Here there was no attempt to indicate the intensity of the sensation nor to corroborate testimony as to the precise nature of the subjective phenomenon experienced, as was done in the case referred to. In the instant case, appellee had testified that she had suffered pain, so that the physician's testimony did not stand alone. We do not regard the admission of the physician's testimony as reversible error.

Nor do we regard the charge given by the learned trial judge on the matter of damages for pain and suffering as grounds for reversal. The charge simply instructed the jury that, in determining the damages to which plaintiff would be entitled, it could take into consideration, her pain and suffering. It is true that the charge on this point could easily be improved upon. Pain and suffering constitute an element of damages for which the injured party is entitled to reasonable compensation. Appellant now complains of the inadequacy of the charge on this point, but having failed to ask for more definite instructions when the opportunity was presented, it is deemed to have waived any objections that might otherwise have been made: *Hysong v. Kenny Transfer Co.*, 304 Pa. 102, 154 A. 922. In view of the fact, moreover, that the court below reduced appellee's verdict from $5000 to $2500, any possible harm to appellant because of inadequacy or failure to set forth a proper test on this item of damages, was corrected.

Judgment affirmed.