## Allshouse v. City of Pittsburgh

*John J. Kennedy, Jr., Evans, Ivory & Evans, David L. Lichtenstein, Lichtenstein & Bartiromo*, for plaintiffs.

*David W. Craig*, City Solicitor, *Marcus Aaron, 2d*, Assistant City Solicitor, *Herbert N. Rosenberg, Rosenberg & Kirshner, Preston J. McDonnell*, for defendants.

ALDISERT, J., January 20, 1965. — Before the court are three petitions for leave to file suits against municipal corporations of this Commonwealth.

To each petition, the respective defendant municipality has raised the defense of a lack of compliance with the Act of July 1, 1937, P. L. 2547, sec. 1, 53 PS §5301, averring a failure to file a notice of claim with the municipality within six months after the date of the accident.

In essence, the act provides that no valid cause of action against a municipality will accrue for damages arising from the negligence of such municipality or of

its employes unless written notice of the claim shall have been given to the municipality within a prescribed period or a court excuses the failure to give such notice upon the showing of a reasonable excuse.[1]

The petitions, arising out of separate and distinct occurrences, present a common generic issue: What constitutes a "reasonable excuse", or, what circumstances are sufficient to excuse the lack of a formal compliance with the Act of 1937?

The question is one over which not a few of our brethren have agonized since the birth of the act in the legislature. On the one hand stands the common law jurisprudential principle that each man has a right not to be injured by the tortious act of another, and that, if so injured, he has a right to file his claim within the period allowed by the statute of limitations.

On the other hand is the concept that even though, at common law, the giving of notice was not a condition precedent to an action against a municipality for tortious injury, the tort liability of a municipality being of statutory origin, the legislature may constitutionally append to the right such conditions as it deems proper or expedient.[2]

---

[1] Act of July 1, 1937, P. L. 2547, sec. 1, 53 PS §5301: "Hereafter any person, copartnership, association or corporation claiming damages from any county, city, borough, town, township, school district or other municipality, arising from the negligence of such municipality or any employe thereof, shall within six (6) months from the date of origin of such claim or within six (6) months from the date of the negligence complained of, file in the office of the clerk or secretary of such municipality a notice in writing of such claim, stating briefly the facts upon which the claim is based. Such notice shall be signed by the person or persons claiming damages or their representatives. No cause of action may be validly entered of record where there was a failure to file such notice within the time required by this act, except leave of court to enter such action upon a showing of a reasonable excuse for such failure to file said notice shall first have been secured."

[2] 38 Am. Jur., Municipal Corp., §673: Eisenhauer v. Cleveland Township, 154 Pa. Superior Ct. 206, 35 A. 2d 570.

The solution thus far to this vestige of the maxim that the sovereign can do no wrong, developed when the divine right of kings philosophy was in full bloom, has been to accord to the act its letter but not its spirit. The rule of strict construction was annexed to the act from the very beginning. This was so because the notice requirement was in derogation of the common right of a people within a commonwealth to seek redress for tortious injuries.[3]

One consequence has been to hold the notice requirement to be applicable only in cases arising out of negligence and not willful tort.[4]

Another, of vastly more importance, is that, in construing the act, our courts have consistently accorded to the municipalities the benefit, based upon the legislative purpose, intended by the act, but rejected the requirement of a literal compliance with its notice provisions.[5]

In many cases, unlike most of our sister States,[6] no formal compliance of any kind, much less a "substantial

---

[3] Lutz v. Scranton, 140 Pa. Superior Ct. 139, 143, 12 A. 2d 121: "This Act is to be construed as far as possible so as not to change or impair rights, liabilities or principles of law as they existed prior to its enactment . . . This Act does not expressly create a condition precedent . . . The law does not require one to perform a useless thing."

Eisenhauer v. Cleveland Township, supra, p. 215: "All of these cases (four appellate cases) reject an *absolutely literal* compliance with the act where it would amount to a denial of justice to an injured plaintiff and not benefit the defendant municipality."

Zack v. Saxonburg Borough, 386 Pa. 463, 126 A. 2d 753: "While the Act of 1937 was intended to protect municipalities from meretricious and dishonest claimants, it did not intend to erect an artificial and insurmountable barrier against honest claimants."

[4] Allen v. Lake Township, 8 D. & C. 2d 476.

[5] Eisenhauer v. Cleveland Township, supra, p. 215; Aloia v. City of Washington, 361 Pa. 620, 65 A. 2d 685.

[6] 18 McQuillan, Municipal Corporations, 3rd ed., §53.163; 38 Am. Jur., Municipal Corp., §703.

compliance," has been held to be sufficient to satisfy the purpose of the act.[7]

## PURPOSE OF THE ACT

The purpose of the act has been variously stated. Notice provisions are generally enacted to further the public policy to prevent needless litigation and to save unnecessary expenses and costs by affording an opportunity amicably to adjust all claims against municipal corporations before suit is brought. It also has a second purpose: To give the municipal authorities prompt notice of the injury and the surrounding circumstances so that the matter may be investigated while it is fresh, the witnesses available and before conditions have changed materially.[8]

Significantly, only the second purpose has been espoused by our appellate courts.[9] Thus, the key component of a "reasonable excuse" would be: Did the municipality have an opportunity to make a timely investigation and prepare a defense while the facts

---

[7] Cases cited subsequently in this opinion.

[8] 38 Am. Jur., Municipal Corp., sec. 674; 18 McQuillan, Municipal Corporations, 3rd ed., §53, p. 153.

[9] Lutz v. Scranton, supra, p. 142: "In enacting the statute the legislature clearly intended to provide municipalities with a safeguard against the loss of an opportunity to make timely investigation and thus avoid the difficulty of defending against stale and fraudulent claims."

Aloia v. City of Washington, 361 Pa. 620, 624, 65 A. 2d 685: "The purpose of (the) statute is to provide municipalities with the opportunity to make a timely investigation and avoid the difficulty of defending against stale claims." (Citations omitted).

Zack v. Saxonburg Borough, supra, p. 470: "The purpose of the Act was to assure municipalities that accidents involving possible liability to them would be reported within a reasonable period of time after they occurred. The vital thing was not that the report be made in an ironclad, inflexible, formalistic manner but that the municipality be informed of the facts which might result in litigation against it."

were fresh, and the witnesses and the evidence available? [10]

Our appellate courts, in construing this act, have never concluded that the object intended by the legislature includes the opportunity to adjust differences and settle claims before suit is brought, and thus to avoid the time and expense inherent in litigation. Under modern trial practices and in view of the "backlog" problems and the manifest need for formal court-supervised conciliatory procedures for effecting settlements, how much benefit this object would provide would be exceedingly conjectural.

### IGNORANCE OF LAW VALID EXCUSE

In the first case to consider the act, it was announced that strict compliance will be excused only where it would be "impossible, materially harmful, or dangerous, for or to the injured person, to require strict compliance with the requirements of the statute. It was certainly never intended that this reasonable excuse should include ignorance of the law, matters of inconvenience to the party, or lack of diligence." [11]

Our Supreme Court then held the rule that the negligence of counsel was a reasonable ground for relief, where the court has the power to grant such relief and such can be done without imposing undue hardship upon the opponents, to be applicable to the finding of a "reasonable excuse" under the act.[12]

This ground was drawn to its logical conclusion by two subsequent cases which held that if a failure to give notice, as required by the act, is to be excused where it is due to the negligence or ignorance of one learned in the law, it should also be excused when due to the neg-

---

[10] Ibid.

[11] Johnston v. Canonsburg Borough, 34 D. & C. 123 (1938), citing 6 McQuillan on Municipal Corporations, 2nd ed., and various non-Pennsylvania cases.

[12] McBride v. Rome Township, 347 Pa. 228, 231, 32 A. 2d 212.

ligence or ignorance of one not learned in the law, where the want of such notice was not unduly harmful to defendants.[13]

The practical consequence of these decisions is to remove the absence of negligence, ignorance of the law and a lack of diligence from the make-up of a "reasonable excuse".

And while negligence is not willful neglect or the open flouting of the statute, delineating between the two in practice is highly difficult, if not impossible, in a preliminary inquiry upon a rule or a petition.

Thus, apart from those situations in which a formal compliance with the act would have been impossible, materially harmful or dangerous to the claimant,[14] the sole determinant of what is a "reasonable excuse" is whether or not defendant municipality will suffer any undue hardship on account of the failure of plaintiff to give a·formal written notice within the six months' period specified by the Act of 1937.[15]

"Reasonable excuses" are circumstances in which a formal compliance with the act would have been impossible, materially harmful or dangerous to the claimant, or in which the object of the act was accomplished without a formal compliance with its requirements.

[13] Bricker v. Gardner and Harrisburg, 55 Dauph. 75; Housley v. City of Philadelphia, 107 F. Supp. 141.

[14] Johnston v. Canonsburg Borough, 34 D. & C. 123.

[15] Eisenhauer v. Cleveland Township, supra, p. 209: "(Whether) the giving of the notice prescribed by the Act of 1937 would . . . have aided the township in the preparation of its defense, and . . . the failure to give the notice did the township . . . (any) harm".

Badger v. Upper Darby Township, 348 Pa. 551, 36 A. 2d 507: "(Whether) the circumstances were such that the object of the statute was otherwise accomplished." See also page 554: "In determining . . . whether a failure to file the notice prescribed by the Act should be excused a weighty circumstance to be considered by the court is whether or not the municipality has suffered any undue hardship."

·See also Sember v. Hickory Township, 30 D. & C. 2d 262, 267,

## THREE GENERAL CATEGORIES

In the latter instance, the object of the act being to provide municipalities with an opportunity to make a timely investigation, the acceptable excuses thus far have fallen into three general categories:

a. Situations in which actual notice of a claim was presented in a way other than that prescribed by the act;

b. Situations in which municipal officials knew of an accident and either conducted an investigation or had ample opportunity to do so;

c. Circumstances present at or occurring near to the time of the accident from which the court can conclude that the municipality will not suffer any undue hardship on account of the delay in investigation.

## FIRST CATEGORY

Situations in the first category are those in which there was a substantial compliance with the act. These are:

The filing of a complaint within the six months' period; [16]

The filing of a written claim with the city solicitor within the period; [17]

The filing of a formal notice which stated conclusions rather than facts; [18]

The presentation of a claim to a school board in session followed by negotiations towards settlement; [19]

The mailing of a formal notice to the president of city council stating the wrong name but the correct address of the claimant.[20]

---

[16] Lutz v. Scranton, 140 Pa. Superior Ct. 139, 13 A. 2d 121.

[17] O'Hara v. Scranton, 342 Pa. 137, 19 A. 2d 114.

[18] Aloia v. City of Washington, 361 Pa. 620, 65 A. 2d 685.

[19] Martini v. Olyphant Borough School Dist., 83 D. & C. 206.

[20] Piazza v. City of Chester, 32 Del. Co. 526.

## SECOND CATEGORY

Situations within the second category are those in which the municipality had knowledge of the facts which might result in litigation against it and either conducted an investigation or had ample opportunity to do so. Here, the particular official or officials having the knowledge is very important. These are:

Where the township supervisors knew of the accident and investigated the scene of the accident with two witnesses shortly thereafter; [21]

Where the township commisioners knew of the accident and an investigation was made by its insurance carrier within the six months' period; [22]

Where a borough had actual notice of a claim, negotiated towards settlement, and an investigation was made by its insurance carrier; [23]

Where oral notice was given to the principal of a public high school on whose sidewalk the accident occurred and reliance was made on his statement that he would inform the proper authorities; [24]

Where the borough council was aware of the accident, and the insurance adjuster of its fire department and the borough engineer conducted investigations within the period; [25]

Where the city council viewed the premises and made and then withdrew an offer of settlement; [26]

Where the accident was reported by the plaintiff to the police, the city commissioner, the chairman of the department of streets and the mayor, and negotiations, deposition and a physical examination of the plaintiff followed thereafter; [27]

[21] Eisenhauer v. Cleveland Township, 154 Pa. Superior Ct. 206, 35 A. 2d 570.

[22] Badger v. Upper Darby Township, 348 Pa. 551, 36 A. 2d 507.

[23] Zack v. Saxonburg Borough, 386 Pa. 463, 126 A. 2d 753.

[24] Wooten v. School District of Philadelphia, 16 D. & C. 2d 463.

[25] Brady v. Borough of Port Clinton, 4 D. & C. 2d 520.

[26] Kennedy v. City of Scranton, 44 D. & C. 652.

[27] Bubb v. City of Sunbury, 37 D. & C. 399.

Where the accident was reported to the police head-quarters and the city solicitor and a written claim made to the city solicitor thereafter.[28]

### THIRD CATEGORY

Situations wherein there was no substantial compliance with the act or in which the municipality cannot realistically be charged with knowledge of the facts which might result in litigation against it fall within the third category. In these cases, circumstances were present at or near to the time of the accident which would vitiate the undue hardship normally accruing to a delayed investigation. These are:

Where the township commissioners knew of the condition which was the proximate cause of the accident and repaired it shortly after the accident; [29]

Where a part-time employe of the borough witnessed the accident and reported it to the borough's street commissioner two to three weeks thereafter; [30]

Where city policemen investigated the accident and make accident reports; [31]

Where the accident occurred on a public sidewalk with the knowledge of police officers and their supervisors, police reports were available, the facts were clear and unequivocal, and the active negligence of a third party was not involved; [32]

Where two police officers investigated the accident, made a full and complete accident report with the

[28] Ruth v. York, 64 York 33.

[29] McBride v. Rome Township, 347 Pa. 228, 32 A. 2d 212; Funk v. Chester, 34 Del. Co. 106.

[30] Parks v. Clarion Borough, 392 Pa. 265, 140 A. 2d 448. We include this case within the third category since it is questionable whether the knowledge of the borough's street commissioner is the knowledge of the borough itself, especially where no investigation was made and numerous accidents occur and are reported without claims against the municipality resulting thereafter.

[31] Sember v. Hickory Township, 30 D. & C. 2d 262.

[32] Streng v. Wilkes-Barre, 28 D. & C. 2d 196.

names of all the witnesses, and took three photographs of the scene;[33]

Where two city policemen investigated the accident and made written reports, plaintiff was conveyed to the hospital by the fire department, and a representative of the city visited the one in charge of the premises involved;[34]

Where a full and intensive investigation of an accident, airplane crash, had already been made by city, State and Federal authorities.[35]

### JUDICIAL METAMORPHOSIS

We have what is a perfect example of a statute that is undergoing a constant metamorphosis in our courts. The plain meaning of the act requires a formal written notice within six months of the origin of the claim or the negligence complained of, or, in lieu thereof, a reasonable excuse for the failure to give such notice.

The state of the law is now such that negligence or ignorance, whether it be of counsel or of the claimant himself, is always a reasonable excuse as long as no undue hardship will accrue to the municipality from an excusal. This can only lead to the open disregard of the requirements of the act.

Under the third category of cases, a set of circumstances present at or occurring near to the time of the accident can, of itself, completely vitiate any undue hardship without any consideration as to whether or not there has been a bona fide attempt to comply with the act. Conceivably, under this test of undue hardship, a not uncommon set of circumstances can totally eviscerate the statute. For example, where a claimant falls on a public sidewalk on ice and snow, is helped to the hospital by two passersby, and initiates an action against the municipality one year after the accident.

---

[33] Bricker v. Gardner and Harrisburg, 55 Dauph. 75.

[34] Roche v. Scranton, 58 Lack. Jur. 7.

[35] Housley v. City of Philadelphia, 107 F. Supp. 141.

Has any undue hardship accrued to the municipality from the fact that their investigation must be 12 instead of six months from the date of the accident? The hardship involved is certainly not undue. For even had formal notice been given towards the close of the permissible period and an investigation immediately begun, the finding of additional witnesses being exceedingly improbable and a view of the conditions at the scene being impossible, the only possible objection would be to the freshness of the recollection of the witnesses, the names of whom plaintiff must supply under our pretrial rules. Is the difference between a six-month old and a 12-months old recollection an *undue* hardship where the facts are so simple and unequivocal, and the active negligence of a third party is not involved? We are of the opinion that, in such a case, the municipality would not have been able to do any more then than it can do now in the conducting of a complete and intensive investigation of the facts and the preparation of a defense.

Perhaps this trend is expressive of an unenunciated feeling that such a requirement smacks of an oppressive denial of the right to redress violative of procedural due process and that, in our time, no public interest is served by relegating municipal corporations to a special position at the expense of the common right of a people to seek redress for tortious injuries from a wrongdoer.

But if a statute is constitutionally valid, the various courts of law are bound, under the Constitution, to uphold it, and ought not to substitute their judgments for the wisdom and the prerogatives of the legislature.

We are of the opinion that, the object of the act being to afford municipalities the opportunity to initiate prompt investigations while the facts are fresh and the witnesses available, the minimum that should be required is that there be a showing that a municipal official in a position to initiate an investigation or see to

it that one is made had knowledge of the facts which might result in litigation against the municipality, or in lieu thereof, a showing of circumstances existing at or near to the time of the accident which would vitiate the undue hardship normally accruing to a delayed investigation.

We do not decide who these officials might be, but the determination should be made with the size of the municipal corporation in mind; we do not decide what the circumstances must be, but important considerations would include the absence of an equivocal fact situation and the active negligence of third parties, the availability of witnesses and police reports, the nature of the condition causing the injuries and the duration of the delay involved.

We are also of the opinion that a willful neglect of, or disregard for, the requirements of the act does not constitute reasonable grounds for an excusal no matter how much actual notice has been conveyed.

The issue of reasonable excuses have been raised in several ways: Petition for leave to file a notice nunc pro tunc; petition for leave to file a complaint and rule to show cause why it should not be permitted; the entry of a complaint followed by preliminary objections, or petition for rule filed by the municipality; motion for judgment n.o.v.

In the case of Housley v. City of Philadelphia, supra, the court announced that although the statute says that ". . . no action may be validly entered . . . unless permission shall first have been secured . . .", under the Pennsylvania decisions, ". . . an action may be entered . . . and later validated by the court, and when it is . . . validated, the validation relates back to the date of entry of the action." [36]

In the case of Zack v. Saxonburg Borough, supra, the Supreme Court held:

---

[36] 107 F. Supp. 141 (1951).

"The failure of written notice was a matter of affirmative defense to be pleaded by the defendant under Rule 1030 of the Rules of Civil Procedure. (Goodrich-Amram, Civil Practice, Rule 2102(b)-10, Annotations, p. 282). The defendant's preliminary objections, therefore, cannot prevail." [37] The case of Mummert v. Besic assumed "for the purpose of this case that preliminary objections are proper." [38]

The issue of a proper procedure not having been raised in the within petitions, the court will assume that the petitions are proper.

In the petition captioned Ruth K. Allshouse and Harry A. Allshouse v. City of Pittsburgh, October term, 1964, no. 228, wherein Ruth Allshouse sustained serious injuries when she stepped into a small hole and fell while crossing a downtown street, the excusal is sought on the ground that she knows the names of only two witnesses and has given these to the city. There is also testimony that one of these witnesses informed a policeman of her fall but he did nothing. Because in a metropolitan community, notice to a policeman cannot constitute actual notice to the municipality, petitioners must meet the burden of showing a lack of undue hardship from the circumstances surrounding this occurrence. We are of the opinion that petitioners did not meet this burden by merely disclosing the names of the witnesses known to them where the condition causing the fall was of a permanent nature.

Furthermore, the case of Zack v. Saxonburg Borough, supra, page 465, requires the showing of "a legitimate, plausible, prima facie claim". It is questionable whether such a claim exists where an adult has failed to see a hole in the street in front of her on an admittedly clear day at about 9:45 a.m.

Wherefore, this petition is denied.

---

[37] 386 Pa. 463, 473, 126 A. 2d 753 (1956).

[38] 15 D. & C. 2d 752 (1958).

In the petition captioned Florence Fitzsimmons v. City of Pittsburgh, October term, 1964, no. 2020, wherein Florence Fitzsimmons fell on a strip of tape used by certain workmen in connection with repairs in Mellon Park, the reasons offered for an excusal are that one city employe witnessed the accident, several city employes witnessed events subsequent to the fall, an entry regarding the fall was made in the park's log book, and two city policemen, who were not informed as to the cause of the injuries and did not investigate, transported petitioner to the hospital and filed aided case reports.

Certain additional facts bear our consideration. Although the accident occurred on October 3, 1962, petitioner delayed 18 months before informing her counsel of this accident even though she had been a party plaintiff to an action against the city at January term, 1943, no. 338, and was being actively represented by counsel at the time of the accident in connection with an injury sustained in 1960. Having sustained a fracture of the hip from the present accident, we see no reason why petitioner should not have informed counsel of her fall well before the time she did.

Secondly, from interrogatories taken and the briefs filed, it is clear that the workmen who were using the tape were the employes of an independent contractor who had contracted with the city to repair the park's benches. At October term, 1964, no. 3724, petitioner initiated an action against the employer of these workmen.

Thirdly, notice was not given to the city law department until August 4, 1964, and though mindful of the number of witnesses available, what we have before us is a delay of some 22 months from the time of the accident.

Absent any showing of the possible effects of the park's log entry and the police aided case reports upon

an investigation delayed 16 months, and absent any showing that the workmen using the tape were working under the direct supervision and control of the city, we find neither a prima facie claim nor a showing of the lack of undue hardship required.

Wherefore, the petition is denied.

In the petition captioned Darla Salvi, a minor, by her parent and natural guardian, James Salvi, and James Salvi in his own right, v. Richard Lee Hudak and City of McKeesport, January term, 1965, no. 2191, wherein it is averred that Darla Salvi, a child five years of age, fell into a depression in the street and was struck by an automobile driven by Richard Lee Hudak before she extricated herself, the excuse offered for the delay is that the parents of the child did not retain counsel until approximately one year after the accident. The ground for excusal offered consists of two detailed reports made by city policemen. One report, made at the scene of the occurrence, describes the scene of the accident, the condition prevalent, the circumstances of the accident, the injuries sustained by the minor and states the names and addresses of the witnesses. The other, made at the hospital to which the police officers had conveyed the minor, is addressed to the chief of police and states in general why the minor was conveyed to the hospital and the injuries she suffered according to the hospital's diagnosis.

Again the issue is whether under the facts and circumstances shown, undue hardship will accrue to the municipality from a delayed investigation.

We are of the opinion that a legitimate, plausible prima facie claim has been shown, and that the availability of these detailed police reports will dissipate the undue hardship that would normally have accrued from an investigation delayed, as here, nine months.[39]

Wherefore, the above-captioned petition is granted.

---

[39] Sember v. Hickory Township, 30 D. & C. 2d 262.