# Emery  v.  Smith

*Kevin Livsey,* for plaintiff.
*Colin Hannings,* for defendant.

HERRON, *J.,* August 18, 1998—

## INTRODUCTION

After a three-day trial of this motor vehicle accident case, the jury returned a $400,000 verdict in favor of plaintiff, James Emery. Defendant has now filed a motion for post-trial relief seeking a new trial, judgment n.o.v. or remittitur. A key issue is whether defendant has waived essential prerequisites for such relief. A review of the record reveals that such waivers have occurred. In addition, defendant's claims as to the evidentiary ruling are substantively unpersuasive.

### *Factual Background*

On September 30, 1992, plaintiff James Emery, while driving a pickup truck en route to his job as an exterminator, was struck in the rear by defendant Antoinette Jackson.[1] As a result of this accident, plaintiff claimed that he suffered serious back pain that eventually

---

1. N.T. (V.1) at 21, 78-79; N.T. (V.2) 61-62. Although the caption lists the defendant as Antoinette Smith, by the time of trial her name had changed to Jackson. N.T. (V.2) at 62-63.

forced him to undergo back surgery and abandon a vocation as an exterminator that he found fulfilling[2] and financially rewarding.[3] In fact, plaintiff introduced testimony from a former supervisor that Mr. Emery had excelled at his job.[4]

As a result of the surgery, plaintiff has a scar and had to wear a back brace for a period of time.[5] He also testified at length concerning his continuing pain, his need to take pain medication and the activities he can no longer enjoy.[6] His wife confirmed this testimony noting that since the 1992 accident, Mr. Emery complains of back pain "every day practically."[7] Since he is unable to return to his job as an exterminator, Mr. Emery works part-time as a pizza delivery person or for a flower store. N.T. (V.1) at 99. He also introduced

---

2. Plaintiff testified that he began working for Hygienic Exterminating in October 1986 as a pest control tech. When asked if he enjoyed his work, plaintiff responded: "Yeah. I loved dealing with people." He also stated that he liked the independence of his job, which allowed him to set his own schedules. N.T. (V.1) at 67-68, 78; 88-90; 94-99.

3. Plaintiff testified that he earned between $27,000 and $30,000 in 1988 and approximately the same in 1989 through 1992. N.T. (V.1) at 100-101.

4. John A. Fielding, a lawyer since 1993, had worked for Hygienic beginning in 1986 where he met Mr. Emery. As his supervisor, Mr. Fielding characterized Mr. Emery's "work habits as extremely hardworking." N.T. (V.1) at 46. Plaintiff testified that "for Hygienic" he had "the second-best production in the 50-year history of the company." N.T. (V.1) at 78.

5. N.T. (V.1) at 94-95.

6. Plaintiff testified that "I still have back pain all the time. My leg pain comes and goes. If my back gets real stressed, then my leg starts throbbing." N.T. (V.1) at 97. He also stated that he takes "pain medication every day." Id. at 105; 103-104.

7. N.T. (V.2) at 54.

expert testimony by Dr. Robert P. Wolf, a certified rehabilitation economist, concerning the negative effect of plaintiff's injury on his lifetime earning capacity.[8]

In defending this claim, defendant developed a theory that plaintiff's injuries had been caused by an earlier 1987 accident or by an incident when he was a senior in high school.[9] In attempting to de-emphasize the significance of the 1992 accident, defense counsel in opening argument stated that after this accident, "both parties drove from the scene of the accident. There was *mild damage* to the vehicles."[10] Similarly, in cross-examining the police officer, Sergeant Storti, who investigated the 1992 accident, defense counsel asked him to assess the amount of damage to the respective vehicles.[11] At one point, defense counsel asked: "Light damage on each of the vehicles?"[12] Finally, appellate counsel maintained this theory that the amount of damage to the vehicles reflected on the seriousness of the 1992 accident during argument on the post-trial motions.[13]

---

8. N.T. (V.2) at 23, 28.

9. Plaintiff stated that he had been involved in another motor vehicle accident in 1987 while driving his pest control vehicle. After this accident, he returned to his job for a time in April 1987 but was forced to leave again in January 1988. He returned to work full time on his regular route in September 1988 when he felt no pain and was able to work five to six days a week (at least 45-55 hours). Between 1988 and 1992, plaintiff testified he felt no back pain except for an occasional "spritz." N.T. (V.1) at 71; 73; 75-77.

10. N.T. (V.1) at 29. For the discussions of the prior back incidents, see *id.* at 30.

11. N.T. (V.1) at 41-43. Plaintiff limited his inquiry to the cause of the accident and the nature of the injuries. *Id.* at 38-40.

12. N.T. (V.1) at 41. The answer was "Yes, sir."

13. During arguments on the post-trial motions, new defense counsel argued that the insurer had not acted unreasonably in refusing

## Procedural Background

Defendant's initial post-trial motion raised various issues that were subsequently abandoned by appellate counsel.[14] Thus, at oral argument on the post-trial motions, defense counsel clarified the issues that defendant is presently pursuing, which are similarly set forth in the defense brief. Defendant is thus still seeking a remittitur based on prior workers' compensation payments to plaintiff.[15] She is also seeking a new trial because "the court improperly allowed the introduction of the repair estimate for the property damage to the defen-

---

to settle this case prior to trial "because of the fact that there was minor damage to Mr. Emery's truck." N.T. (Hearing 6/30/98) at 23.

14. In her initial post-trial motion, defendant sought a judgment n.o.v. on the grounds that plaintiff's allegations of disability were insufficient, reserving the right to assert additional grounds upon review of the transcript. Defendant sought a new trial based on six grounds relating to the voir dire, the insufficiency of the evidence and the jury charge. Finally, defendant sought a remittitur based on two specific grounds (including past workers' compensation payments), while reserving the right to raise additional issues. See defendant's post-trial motion.

The brief subsequently submitted by defendant did not raise many of these issues but instead raised some new issues including the need for a new trial because of the introduction of the repair bill for defendant's vehicle. Defendant also seeks a judgment n.o.v. because plaintiff failed to establish causation. See brief in support of defendant's motion for post-trial relief.

At oral argument on the post-trial motions, appellate counsel indicated that after review of the trial transcript he had decided to abandon some of the issues raised in the post-trial motion: the first issue for the judgment n.o.v. was abandoned; in addition, he had decided not to pursue issues 1-5 that had been presented in the original motion seeking a new trial. N.T. (Hearing 6/30/98) at 4. This court, therefore, will not address those issues.

15. N.T. (Hearing 6/30/98) at 5, 12-13.

dant's vehicle." [16] In her brief, defendant also argues for judgment n.o.v. for failure to show causation; since it is not clear whether she has decided to abandon this issue, it will be addressed. Finally, she argues that plaintiff is not entitled to delay damages because there was no evidence of proper service of the complaint in this case—an issue previously raised (and dismissed) in preliminary objections before another judge.[17]

## LEGAL ANALYSIS

### 1. *Motion for a New Trial Based on Evidentiary Rulings*

It is well established that the trial court has the discretion to decide whether a new trial should be granted. *Chiaverini v. Sewickley Valley Hospital,* 409 Pa. Super. 630, 633, 598 A.2d 1021, 1022 (1991), *alloc. denied,* 530 Pa. 659, 609 A.2d 167 (1992). A new trial will not be ordered just because of a trial error. Rather, any claimed trial error must influence the verdict and lead to an incorrect result. *Naccarati v. Garrett,* 351 Pa. Super. 437, 443, 506 A.2d 428, 430 (1986); *Krysmalski by Krysmalski v. Tarasovich,* 424 Pa. Super. 121, 127, 622 A.2d 298, 301 (1993), *alloc. denied,* 535 Pa. 675, 636 A.2d 634 (1993).

### A. Waiver

In her brief and oral argument, defendant argues that she is entitled to a new trial because the court "improperly allowed the submission of *irrelevant* and prejudicial evidence," a repair estimate for defendant's vehicle. She also claims that the repair estimate was

---

16. *Id.* at 8.
17. N.T. (Hearing 6/30/98) at 13.

improperly authenticated because "the court improperly permitted plaintiff to authenticate a repair estimate on defendant's vehicle through the defendant." Defendant's brief at 3-4. (emphasis added) The record reveals, however, that it was the defendant who allowed this testimony—by failing to raise a specific objection at trial. She thereby waived both the authentication and relevancy arguments as to the repair estimate.

The issue of the repair estimate for defendant's vehicle first came up after testimony by plaintiff's wife, Mary Emery. At the close of plaintiff's case, his attorney stated that he would like to offer into evidence the repair bill for defendant's vehicle. The court then asked defense counsel if there were any objections, to which counsel responded.

"The Court: Thank you. You may step down. That concludes the plaintiff's case?

"Mr. Livesey: Yes, Your Honor, except I like to offer into evidence, if I may, the repair bill of the defendant's automobile, which was supplied to me by the defendant's counsel during discovery.

"The Court: You've seen it. Do you have any objection?

"Mr. Hannings: I object to that, yes.

"The Court: Objection sustained. There is no independent evidence of it, no authenticity.

"Mr. Livesey: May I see you at sidebar?

"The Court: Unless you have a stipulation, I can't accept it. You may see me at sidebar." N.T. (V.2) at 56-57.

After a sidebar conference, plaintiff's counsel on the record requested to put the defendant on the stand as on cross "just for this particular matter." Defendant

raised no objection to this proposal. See N.T. (V.2) at 58. Defendant Antoinette Jackson testified as follows:

"Q. I'm showing you a document which I have marked as P-2, and ask you whether you can identify that, please?

A. Yes.

Q. And what is P-2?

A. This is an invoice from Berwyn Collision.

Q. Regarding what, Miss Jackson?

A. Regarding the work that was completed on my car.

Q. Following the September 30, 1992 accident?

A. That's correct.

Q. Thank you."

"Mr. Livesey: Your Honor, I offer P-2 into evidence.

The Court: Do you have any questions?

Mr. Hannings: I have no questions, Your Honor.

The Court: All right. You may step down. Thank you.

The Witness: Thank you.

The Court: Is there any objection to P-2?

Mr. Hannings: It remains, Your Honor.

The Court: Objection is overruled; P-2 is admitted." N.T. (V.2) at 60.

As this transcript demonstrates, the defendant raised no specific objection to this testimony as to the repair bill until the witness was dismissed and the court made an inquiry. While the defendant did state in response to the court's question as to whether he had any objections that "it remains," by that point Ms. Jackson had already testified concerning the bill and had been dismissed as a witness. The statement "it remains," moreover, does not inform the court as to the specific

grounds of defendant's objection. As the Superior Court has observed, failure to give such a specific objection denies the court the "opportunity to either respond to the objection or to alter the course of the questioning accordingly." *Commonwealth v. Willis,* 380 Pa. Super. 555, 572, 552 A.2d 682, 690 (1988), *alloc. denied,* 522 Pa. 583, 559 A.2d 527 (1989). For this reason, "[i]t is axiomatic that only issues raised by specific objection in the trial court may be addressed on appeal." *Id.* at 571, 552 A.2d at 690.

In *Commonwealth v. Willis, supra,* the Superior Court analyzed the following testimony, concluding that counsel failed to preserve his objection:

"The record in this case reveals three objections during Assistant Attorney Delaney's testimony. Two involved the mere utterance of the word 'objection' without any grounds stated for the objection. The remaining objection was stated as follows:

"Q. Did she testify to the court consistently with what she had told you earlier that day?

"Mr. Goldman: Objection. Are you trying to put in inconsistent statements or consistent? This is really getting beyond what I feel the prosecution is allowed to do, Your Honor.

"The Court: No. He can ask him if what she said was substantially consistent with what she said outside the courtroom. I see no problem with that. I will permit that." *Commonwealth v. Willis, supra* at 571-72, 552 A.2d at 690.

In explaining why counsel's objection was waived for lack of specificity, the *Willis* court noted: "Counsel in no way indicated that his objection was based upon the ground that the victim's admission that she had made the prior inconsistent statements at the first pre-

liminary hearing rendered the evidence of the prior consistent statement inadmissible. Because counsel failed to assert that specific ground for objection at trial, the issue is waived." *Id.* at 572, 552 A.2d at 690.

Similarly, counsel in the instant case failed to explain the basis for his objection; indeed, he failed to interpose one until after the witness was dismissed. Now, however, defendant raises two objections to this repair bill: that it is irrelevant and that it has not been properly authenticated. Defendant's brief at 3. However, because defendant failed to raise either of these specific objections at time of trial, they are waived.

## B. Relevancy

In response to defendant's argument that the repair bill for defendant's vehicle was irrelevant and prejudicial,[18] plaintiff properly observes that this evidence was directly relevant to an issue that defendant repeatedly raised during the trial. In opening arguments and the cross-examination of Sergeant Storti, defendant repeatedly raised the issue of the damages to the respective vehicles. Thus, in his opening statement, defendant began developing the leitmotif that the 1992 accident was not serious because "both parties drove away from the scene of the accident. There was *mild* damage to the vehicles." N.T. (V.1) at 29. The defense continued to develop this theme in the cross-examination of Sergeant Storti, the police officer who investigated the accident. After plaintiff questioned Sergeant Storti concerning the accident's cause and attendant injuries, it was the defendant who brought up the issue of damage to the vehicles by repeatedly asking the sergeant about the extent of damage to the vehicles. He thus began by

18. Defendant's brief at 3.

asking whether both vehicles were driven away from the scene of the accident. When the police officer answered affirmatively, he specifically asked the officer about the damage to either vehicle. When the sergeant could not recollect, he was given photographs, which, he stated, indicated "light" damage. He was then asked whether he had any independent recollection to either vehicle. Finally, he was asked again to examine a photograph to determine whether there was any damage to the rear of the truck.[19]

It is thus beyond dispute that it was the defendant who repeatedly raised the issue of the degree of damage to the vehicles as a factor in determining the seriousness of the accident, thereby making this issue relevant to plaintiff's response. "Relevance," the Superior Court has observed, "is a threshold consideration in determining the admissibility of evidence." *Whyte v. Robinson,* 421 Pa. Super. 33, 38, 617 A.2d 380, 383 (1992). It is well established that the admission of evidence is within the discretion of the trial judge. *Lewis v. Mellor,* 259 Pa. Super. 509, 515, 393 A.2d 941, 944 (1978). In deciding on the relevance of evidence, the trial court must weigh any prejudicial effect, and may "properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury." *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa. Super. 14, 22, 473 A.2d 584, 588 (1984).

Defendant's reliance on *Carlson v. Bubash,* 432 Pa. Super. 514, 639 A.2d 458 (1994), *alloc. denied,* 540 Pa. 592, 655 A.2d 982 (1995) is thus misplaced. Defendant's brief at 3. *Carlson* dealt with excluding the use of medical bills to prove the extent of pain and

---

19. N.T. (V.1) at 40-43.

suffering. As plaintiff points out, however, the repair bill was introduced to address the issue of the extent of damages to the vehicles—an issue that defendant had repeatedly raised and thus made relevant. Plaintiff's brief at 9. Moreover, as previously explained, defendant waived this issue by failing to make a specific objection.

## C. Authentication

Although defendant waived her objection to the authentication of the repair bill, this bill was properly authenticated. In arguing that the authentication was improper, defendant cites *In re Estate of Indyk,* 488 Pa. 567, 413 A.2d 371 (1979) for the proposition that only someone familiar with the preparation and maintenance of the repair company's records could authenticate the bill. *Indyk,* however, deals with admission of documents under the business records exception. Plaintiff, in contrast, argues that defendant's authentication was proper because as the Superior Court observed in *Commonwealth v. Brooks,* 352 Pa. Super. 394, 397, 508 A.2d 316, 318 (1986), "authentication of a writing is not required if the adversary has admitted its genuineness in open court . . . ." See also, Packel & Poulin, *Pennsylvania Evidence* §901.5 at 685 (1987) (writings may be authenticated by a party's admission). In this case, Ms. Jackson clearly admitted that the repair bill had been prepared by Berwyn Collision for "work completed on my car" after the September 1992 accident. N.T. (V.2) at 59. It was therefore properly admitted.[20] Moreover, defendant failed to object specifi-

---

20. Under the Pennsylvania Rules of Evidence, effective October 1, 1998, authentication of evidence is a prerequisite for admission and can be achieved by "testimony of a witness with knowledge"

cally to the court that Ms. Jackson could not properly authenticate the bill.

### 2. Defendant's Request for Remittitur

In her post-trial motion and brief, plaintiff seeks a remittitur of the verdict to reflect workers' compensation payments received by the plaintiff. Defendant's brief at 4. Yet, the case she cites in support of this request, *Schroeder v. Schrader,* 453 Pa. Super. 59, 682 A.2d 1305 (1996), involved a court's molding of a verdict to reflect such payments rather than a remittitur.

These distinctions are not inconsequential. A remittitur "may only be ordered when a verdict that is supported by the evidence suggests that the jury was guided by partiality, prejudice, mistake or corruption." *Krysmalski by Krysmalski v. Tarasovich,* 424 Pa. Super. 121, 147, 622 A.2d 298, 312 (1993), *alloc. denied,* 535 Pa. 675, 636 A.2d 634 (1993). See also, *Sprague v. Walter,* 441 Pa. Super. 1, 69-70, 656 A.2d 890, 924 (1995). A motion to mold a verdict, in contrast, can be granted only where "the verdict to be molded" manifests "a clear intent on the part of the jury." *Krock v. Chroust,* 330 Pa. Super. 108, 116, 478 A.2d 1376, 180-81 (1984).

Defendant does not argue that the jury's verdict was based on partiality, prejudice or corruption. She claims instead that verdict should be molded to reflect the plaintiff's receipt of workers' compensation payments in the amount of either $112,000 which plaintiff actually

---

that "a matter is what it is claimed to be." Pa.R.Evid. 901(b)(1). Under this rule, which seems broader than the rule invoked by plaintiff, Ms. Jackson's authentication would clearly suffice. Moreover, this rule is based on past precedent as indicated in the commentary.

received or the plaintiff's total entitlement in payments ($170,166 plus $42,000).[21]

In *Shroeder v. Schrader,* the Superior Court concluded that a plaintiff injured in an automobile accident could not recover damages for any workers' compensation payments received, if the cause of action commenced (*i.e.* accident occurred) prior to the 1993 amendments to sections 1720 and 1722 of the Motor Vehicle Financial Responsibility Law as part of the reform of the Workers' Compensation Act. Since the accident in *Schroeder,* like the accident in the instant case, took place in 1992, the court concluded that the jury's verdict awarded to plaintiff should be molded to reflect the workers' compensation payments she received. In so doing, the court emphasized the strong legislative intent to prevent double recovery for injuries compensated by workers' compensation.

There are, however, certain crucial distinctions between *Shroeder* and the present case. In *Shroeder,* there was a pretrial ruling that any amounts received by the injured plaintiff would be reduced by the amounts paid or payable to her by workers' compensation. As plaintiff indicates, there has been no evidence presented whatsoever as to Mr. Emery's workers' compensation payment prior to defendant's post-trial motion.[22] More sig-

21. Defendant states that plaintiff's workers' compensation carrier paid plaintiff $359 per week in wages for 2 1/4 years following the accident. In April 1995, the plaintiff accepted a lump sum payment of $70,000 in lieu of the remainder of the amount to which he was entitled (*i.e.* $170,166). Defendant's brief at 5. Defendant, however, does not indicate the source for the figures.

22. See plaintiff's brief at 13. In *Shroeder,* there appears to have been evidence presented as to the plaintiff's workers' compensation payments since the court refers to an exhibit 35 (notice of compensation payments), though the court is not explicit on this point.

nificantly, however, the verdict rendered in the *Shroeder* case designated specific amounts allocated to past lost earnings, future lost earnings and pain and suffering. This gave the court guidance as to the jury's intent so that the allocations as to earnings could be reduced by the workers' compensation payments. *Shroeder, supra* at 61, 682 A.2d at 1306.

In the instant case, however, defendant consented to a general verdict form; she failed to request a verdict sheet that would have differentiated between allocations for pain and suffering or earnings.[23] Moreover, defendant made no objections to the jury charge.[24] Under *Krock v. Chroust,* 330 Pa. Super. 108, 478 A.2d 1376 (1984), this failure to object to the verdict form or the jury charge is fatal to defendant's request for a molded verdict.

In *Krock v. Chroust,* the Superior Court concluded that a trial court erred when it molded a jury verdict to $15,000 to reflect the maximum work loss benefits recoverable under the No-Fault Motor Vehicle Insurance Act because the verdict form did not distinguish between allocations between lost earnings and pain and suffering. The action in *Krock* was a survival action brought on

---

It merely discounts plaintiff's argument that there was insufficient evidence presented at trial as to her payments. See *Shroeder, supra* at 69, 682 A.2d at 1310. This point is not crucial to the ruling in the instant case, however, which revolves around the lack of a clear jury verdict on this issue.

23. This court asked each party to review the interrogatory form and then initial it if there was no objection. Counsel for both parties initialed the form; moreover, neither interjected any objection on the record. See N.T. (V.2) at 14. Question 2 of the verdict sheet asked the jury "What amount do you find the plaintiff's total damages to be?" The jury foreman indicated a total award of $400,000.

24. N.T. (V.2) at 86-87; 91.

behalf of the estate of a man who had been killed in an automobile accident. The *Krock* court noted that under the No-Fault Act, the estate clearly was not entitled to recover from the tort-feasor the $15,000 work loss benefits recoverable from a no-fault carrier. It nonetheless refused to allow the verdict to be molded or reduced by that amount for the following reasons:

"It is clear from the record that appellant sought to recover all wage loss sustained by the estate, including the amount which properly should have been recovered from the no-fault insurance carrier. As discussed above, *this he had no right to do. However, it is equally unclear from the record exactly what losses the verdict was intended to compensate. The award was not itemized to reflect its component parts; consequently, we have no indication as to what the verdict comprised. It is possible, although unlikely, that the jury intended to compensate appellant for noneconomic detriment alone. If so, then to reduce the award for available work loss would be unjust."* Krock, supra at 115-16, 478 A.2d at 1380. (emphasis added)

Similarly, in the instant case, plaintiff introduced evidence as to his pain and suffering in addition to lost earnings. Since the verdict form did not differentiate as to the award, "in light of the complete lack of information about the intent of the jury," it would be "error for the trial court to grant appellee's motion to mold the verdict." *Krock, supra* at 116, 478 A.2d at 1380. If defendant had sought special interrogatories on this issue, it might now be possible to grant her relief. The following observations of the *Krock* court apply equally to this case:

"Appellee could have easily received the answers which the trial judge was forced to presume by submitting points for charge requesting that the jury return

special findings. If special findings would add to a logical and reasonable understanding of the issue, it is within the discretion of the trial judge to grant such a request. . . .

"Herein, the attorneys for the parties and the trial judge discussed the work loss issue in the pretrial conference; however, no agreement was included in the record, nor were special interrogatories submitted to the jury to ascertain the meaning of the verdict. By failing to raise this issue either through appropriate points for charge or objections voiced prior to the discharge of the jury, [the] appellee waived his right to seek a cure to an inflated verdict through a motion to mold. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974);.*Lutz v. City of Scranton,* 140 Pa. Super. 139, 13 A.2d 121 (1940). *Consequently, the exercise of the trial court's power to mold the verdict was inappropriate, and must be set aside." Krock, supra* at 116-17, 478 A.2d at 1381. (emphasis added) (citations omitted)

Under *Krock,* therefore, defendant has waived her right for a reduction of the jury verdict and this court lacks the power to mold the verdict.

### 3. *Defendant's Request for a Judgment N.O.V.*

Finally, in her brief, defendant argues that she is entitled to a judgment n.o.v. She argues that there is no evidence of causation on the record that would link plaintiff's injuries to the 1992 accident, because the videotaped testimony of Dr. Kovalsky was not moved into evidence as required by Pa.R.C.P. 4017(h). Defendant's brief at 6-7. She concedes that Dr. Kovalsky's videotaped deposition was played at trial to the jury. *Id.*

Defendant, thus, is not challenging the substance or sufficiency of Dr. Kovalsky's testimony as to causation, so that issue has not been raised and will not be addressed.[25] Defendant's technical argument is unsupported by any precedent whatsoever. Instead, she relies solely on Pa.R.C.P. 4017.1(h). Pa.R.C.P. 4017.1 focuses on procedures for a videotaped deposition. The only specific reference to the use of this videotaped deposition at trial is the requirement under 4017.1(a)(2) that any videotaped deposition used at trial must be accompanied by a transcript of the deposition, the obvious reason being to facilitate rulings on objections. This issue, obviously, is not raised by defendant. Instead, she relies solely on 4017.1(h) which states:

"(h) At a trial or hearing that part of the audio portion of a videotape deposition which is offered in evidence and admitted, or which is excluded on objection, shall be transcribed in the same manner as the testimony of other witnesses. The videotape shall be marked as an exhibit and may remain in the custody of the court." Pa.R.C.P. 4017.1(h).

The explanatory comment indicates that the purpose of this rule was to give the court the "option of returning the tape to the custody of the party at the conclusion of the trial. This amendment will eliminate the storage problems which some courts have faced with respect to the videotapes." Explanatory comment. Thus, Rule 4017.1(h) is purely a housekeeping provision; its reference to marking a videotape as an exhibit does not

---

25. As plaintiff points out, Dr. Kovalsky, who treated plaintiff, testified as to causation when he discussed how the 1992 accident caused plaintiff's back pain, necessitating surgery, continuing treatments and pain medication. Kovalsky deposition at 52-54.

go to the substance of the testimony on the tape. Defendant's arguments on this point are thus without merit.

## 4. *Motion for Delay Damages*

Plaintiff also filed a motion pursuant to Pa.R.C.P. 238 seeking delay damages in the amount of $111,539.10 calculated from April 29, 1995, one year after defendant was served, through April 16, 1998, the last day of the trial.

Defendant responds that plaintiff is not entitled to these delay damages for two reasons. First, she argues that she was never properly served, which is a prerequisite for triggering the calculation of delay damages. Secondly, she argues that plaintiff is not entitled to damages for any delay after October 6, 1997 because a trial had been scheduled for that date but it had to be rescheduled after plaintiff's counsel failed to appear at a mandatory pretrial conference and the case was dismissed without prejudice. A trial was ultimately rescheduled after plaintiff filed a petition to open judgment that was granted by order dated October 23, 1997.

During the post-trial oral argument, plaintiff agreed to recalculate the delay damages up until October 6, 1997.[26] He has submitted an amended petition, and defendant has not objected to the newly calculated amount of $91,789.46, though presumably the objections as to service remain. See plaintiff's amended motion for delay damages.

As a threshold matter, the procedural context of defendant's claim of improper service must be addressed. The issue of improper service is not properly before this court as grounds for post-trial relief. As defendant notes, he filed preliminary objections raising this issue

---

26. N.T. (6/30/98) at 17.

which were overruled by a different judge, the Honorable Joseph O'Keefe, by order dated November 17, 1994. Defendant did not, however, raise this issue in her post-trial motion. See defendant's post-trial motion. Instead, she raises the issue of improper service only in her memorandum opposing plaintiff's petition for delay damages. Pa.R.C.P. 227.1, however, clearly states:

"(b) Post-trial relief may not be granted unless the grounds therefor,

"(1) if then available, were raised in *pretrial proceedings* or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

"(2) *are specified in the motion. The motion shall state how the grounds were asserted in pretrial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds."* Pa.R.C.P. 227.1(b). (emphasis added)

The issue of improper service—raised in preliminary objections—would constitute a "pretrial proceeding" as set forth in 227.1(b)(1). By not raising this issue in her post-trial motion, she waived it as grounds for post-trial relief by this court. *Brindley v. Woodland Village Restaurant,* 438 Pa. Super. 385, 389, 652 A.2d 865, 867 (1995) ("[p]ost-trial relief may not be granted unless the grounds therefor are specified in the motion; . . .").

In terms of plaintiff's motion for delay damages, this court is bound by the prior order denying defendant's preliminary objections. *Buck v. Coldway Food Express Inc.,* 383 Pa. Super. 580, 557 A.2d 404 (1989) (it was improper for judge after trial to reverse order of motions court judge as to validity of service by publication). In the instant case, the record reveals that Judge O'Keefe

denied defendant's preliminary objections as to improper service. The record reveals that plaintiff filed an affidavit of service sworn by Gordon Braxton, process server. The affidavit stated that a complaint was served on April 29, 1994 on Antoinette Smith at 6026 Carpenter Street in Philadelphia. The woman was identified as in her mid-50s, height five feet five inches, weighing 130 pounds. The box "refused to give name or relationship" was checked off. Defendant's preliminary objections to this service asserted that she was not properly served but she did not attach her own supporting affidavit. She thus failed to establish a record to contradict the affidavit. Instead, she relied solely on the verification of her attorney "that the facts set forth in the foregoing pleading are true and correct to the best of *her* knowledge, information and belief." See preliminary objections of defendant Antoinette Smith, verification.

In her response to the motion for delay damages, defendant suggests, inter alia, that the affidavit of service was improper because "the complaint clearly was not handed to Ms. Smith" due to the failure to identify the recipient. Defendant's response to motion for delay damages at 2. Yet, courts dealing with deputy sheriff's return of process have concluded that failure to identify the recipient of the process alone does not invalidate service. See *e.g., American Vending Co. Inc. v. Brewington,* 289 Pa. Super. 25, 31, 432 A.2d 1032, 1035 (1981), citing *Pincus v. Mutual Assurance Co.,* 457 Pa. 94, 321 A.2d 906 (1974) "(the return of service showed that the recipient whose name was required refused to state his name; return was held sufficient to establish service and to hold otherwise would permit one to eschew service by merely refusing to give his name)."

The Pennsylvania Rules of Civil Procedure provide that in actions begun in Philadelphia, process may be

served within the county "by the sheriff or a competent adult who is not a party." Pa.R.C.P. 400.1. Acceptance of service may be achieved by "handing a copy" of the original process "at the residence of the defendant to an *adult member of the family with whom he lives.*" Pa.R.C.P. 402. On its face, the affidavit of service indicated that the complaint had been given to a woman in her mid-50s. Defendant failed to rebut this either with her sworn affidavit in support of the preliminary objections or even through her testimony later at trial. She was never questioned at trial as to her residency, either, on direct or cross-examination. See N.T. (V.2) at 58-59; 61-69. Indeed, even when the topic of her driver's license came up, she did not testify as to the address listed on it. N.T. (V.2) at 63. See *e.g., Ball v. Barber,* 423 Pa. Super. 358, 361, 621 A.2d 156, 157 (1993) (service of process listed on driver's license and vehicle registration constituted proper service).

For all of these reasons, this court relies on the prior ruling of the Honorable Joseph O'Keefe and grants plaintiff's amended petition for delay damages in the amount of $91,789.46 while entering judgment in her favor for a total of $491,789.46.

## ORDER

And now, August 18, 1998, upon consideration of defendant's motion for post-trial relief, plaintiff's response thereto, oral argument and the testimony at trial, it is hereby ordered that this motion is denied for the reasons set forth in a contemporaneously issued opinion. It is further ordered that plaintiff's amended motion for delay damages in the amount of $91,789.46 in addition to the jury verdict of $400,000 is granted. Judgment is hereby entered in favor of plaintiff in the amount of $491,789.46.