478 A.2d 1376

**Robert W. KROCK, Administrator of the Estate of Donald F. Krock, Deceased, Appellant,**

v.

**Robert Stephen CHROUST and Carl R. Hamm.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1984.

Filed July 20, 1984.

Petition for Allowance of Appeal Denied Dec. 3, 1984.

---

Thomas Martin, Philadelphia, for appellant.

Michael P. Shay, Bethlehem, for appellees.

Before ROWLEY, HESTER and ROBERTS, JJ.

HESTER, Judge:

This appeal raises the novel issue of whether a jury verdict on a survival action should be reduced by $15,000.00, the maximum work loss benefits recoverable under the No-fault Motor Vehicle Insurance Act.[1]  We hold that the lower court improperly granted appellee's motion to mold the verdict, and we hereby reinstate the original verdict of $100,000.00.

Appellant's decedent was involved in an automobile accident on September 24, 1975, and died from his injuries twelve days later.  Appellant thereafter filed a complaint in trespass alleging a survival cause of action and a wrongful death cause of action.  The case was tried by a jury on January 12, 1981 through January 16, 1981.  A verdict was rendered in favor of appellant and against appellee Robert Chroust in the amount of $45,000.00 on the wrongful death

1.  40 P.S. § 1009.101 et seq. (hereinafter No-fault Act).

action and in the amount of $100,000.00 on the survival action.[2]

Appellee filed a motion to mold the verdict, requesting that the award in the survival action be reduced by $15,-000.00.[3] The lower court granted the motion and decreased the verdict accordingly. This appeal followed.

■ Appellant asserts that decedent's estate did not receive the work loss benefits which were deducted from the verdict due to the fact that such benefits were not available to decedents' estates in 1975. Furthermore, appellant argues that it is impossible to ascertain from the general verdict whether damages were attributable to work loss or whether it solely compensated the decedent for pain and suffering he endured prior to death. For the above reasons, appellant contends that the trial court erred in molding the verdict.

The No-fault Act created a comprehensive system of compensation for persons who sustain losses resulting from the maintenance or use of a motor vehicle. Certain benefits are available to "any victim or any survivor of a deceased victim of an automobile accident."[4] One type of "basic loss" compensated by the No-fault Act is "work loss," which is defined as:

(A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this Act; and

(B) reasonable expenses of a victim for hiring a substitute to perform self-employment services, thereby

---

2. A verdict was returned in favor of defendant Carl Hamm, who is not involved in the instant appeal.

3. Appellee also petitioned for and received a $5,000.00 reduction in the wrongful death award. The No-fault Act provided for a limitation on recovery of survivor's loss in the sum of $5,000.00. 40 P.S. § 1009.202. Appellant had claimed and was awarded monetary damages of $45,000.00 under the Wrongful Death Act, 42 Pa.C.S.A. § 8301, for the pecuniary losses sustained as a result of the decedent's death. He does not now dispute the $5,000.00 reduction, conceding that appellee could only be found liable for loss which was not compensated under the No-fault Act.

4. 40 P.S. § 1009.201(a).

mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income.

40 P.S. § 1009.103. Appellant asserts that, at the time of the accident, the above language was traditionally interpreted to limit recovery of work loss benefits to those victims who survived their injuries.

In 1980, the Pennsylvania Supreme Court decided *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), wherein, for the first time, a survivor of a deceased victim was permitted to recover work loss benefits.[5] In so ruling, that court reasoned "[t]he recovery of work loss benefits by survivors of deceased victims best fulfills the legislature's express intention to provide 'compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents' by providing 'adequate basic loss benefits [to] ... the survivors of deceased victims.'" (footnote omitted) *Id.*, 491 Pa. at 460, 421 A.2d at 636.

The above holding was thereafter construed by this Court as deciding an issue of statutory construction not previously announced by an appellate court. See *Daniels v. State Farm Mutual Automobile Ins. Co.*, 283 Pa.Super. 336, 423 A.2d 1284 (1980). As such, that interpretation of legislative intent was to be regarded as embodied within the statute from its enactment. Thus, the *Heffner* decision was not viewed as changing the law or as creating a new right to work loss benefit. *Sachritz v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 293 Pa.Super. 483, 439 A.2d 678 (1981), aff'd. 500 Pa. 167, 455 A.2d 101 (1982). Therefore, at the time of the accident which claimed the decedent's life, work loss benefits were not limited to victims who survived their injuries.

Appellant argues nevertheless that the *Heffner* case, while permitting payment of work loss benefits to "surviv-

5. A "survivor" is defined as a
   (A) Spouse; or
   (B) Child, parent, brother, sister or relative dependent upon the deceased for support.
   40 P.S. § 1009.103.

ors" of a deceased victim, did not permit recovery by an *estate* of a deceased victim, which is not a survivor within the meaning of the No-fault Act. Accordingly, he contends that work loss benefits would not have been available to his decedent's estate even after the *Heffner* decision.

While it is true that *Heffner* did not address the availability of work loss benefits to a decedent's estate, that issue was resolved by this Court in *Freeze v. Donegal Mutual Insurance Co.*, 301 Pa.Super. 344, 447 A.2d 999 (1982) (Hester, J. dissenting), aff'd. 504 Pa. 218, 470 A.2d 958 (1983). Therein, the administrator of a deceased eleven-year-old's estate sought to recover work loss benefits. We held that the estate of a deceased victim was permitted to recover work loss benefits under the No-fault Act. In affirming our decision, the Supreme Court pertinently observed:

> In *Heffner* ... [w]e held that "survivors" of deceased victims are entitled to payment of these benefits under the terms of the No-fault Act. It follows then that, if work loss benefits do not terminate upon the death of a deceased victim, absent a statutory bar, those benefits are recoverable by the deceased victim's estate. This is the natural, logical and compelling extension of our holding in *Heffner*.

*Id.*, 504 Pa. at 222, 470 A.2d at 960. Just as *Heffner* was given retroactive application, so too must *Freeze* be applied. Thus, work loss benefits were available to appellant as representative of his decedent's estate.

■ Although there is no indication on the record as to whether appellant actually received those benefits, that fact is not determinative of the issue before us. Appellant had a right to recover such benefits; his failure to do so does not entitle him to seek recovery from the tortfeasor. To permit a plaintiff to maintain a cause of action for the first $15,000.00 of work loss simply because the plaintiff has not recovered that work loss from a no-fault insurance carrier would violate § 301, which abolished a cause of action in tort for the first $15,000.00 of lost earnings. A plaintiff

cannot choose to forego collection of his basic loss benefits and then attempt to hold the tortfeasor liable for those economic losses otherwise recoverable.

Nonetheless, for the reasons that follow, we cannot permit the verdict to be reduced by that amount.

■ Although the promulgation of the No-fault Act effectively abolished tort liability for injuries arising from the maintenance or use of a motor vehicle, it did not abrogate a survival cause of action. When an accident results in death, a survival cause of action remains viable by the decedent's estate for damages for non-economic detriment. 40 P.S. § 1009.301(a)(5). In addition to the damages recoverable for non-economic loss, the plaintiff's estate may seek to recover those economic losses which remain uncompensated by the No-fault Act. 40 P.S. § 1009.301(a)(6).

■ The measure of damages in survival actions is "the decedent's pain and suffering and loss of gross earning power from the date of injury until death, and the loss of his earning power, less personal maintenance expenses, from the time of death through his estimated working life-span." *Slaseman v. Myers,* 309 Pa.Super. 537, 545, 455 A.2d 1213, 1217–8 (1983). See also *Heffner v. Allstate Ins. Co., supra,* and cases cited therein. Therefore, loss of earnings greater than the $15,000.00 compensated by work loss benefits is an appropriate element of damages in a survival action.

■ Herein, appellant clearly sought to recover both economic and non-economic loss. Appellant introduced evidence reflecting a economic loss to decedent's estate in the sum of $572,140.00. In addition, testimony was elicited from witnesses detailing the pain and suffering endured by the decedent subsequent to the accident which ultimately claimed his life.

It is clear from the record that appellant sought to recover all wage loss sustained by the estate, including the amount which properly should have been recovered from the no-fault insurance carrier. As discussed above, this he

had no right to do. However, it is equally *unclear* from the record exactly what losses the verdict was intended to compensate. The award was not itemized to reflect its component parts; consequently, we have no indication as to what the verdict comprised. It is possible, although unlikely, that the jury intended to compensate appellant for non-economic detriment alone. If so, then to reduce the award for available work loss would be unjust.

■ In light of the complete lack of information about the intent of the jury, it was error for the trial court to grant appellee's motion to mold the verdict. It is beyond peradventure that the trial judge has the power to mold a jury's verdict. *Fish v. Gosnell,* 316 Pa.Super. 565, 463 A.2d 1042 (1983); *Ferrick Excavating & Grading v. Senger Trucking Co.,* 315 Pa.Super. 69, 461 A.2d 800 (1983). However, the verdict to be molded must manifest a clear intent on the part of the jury. Where the intention of the jury is far from obvious, the verdict should be returned to the jury for further deliberations or a new trial should be granted. *House of Pasta, Inc. v. Mayo,* 303 Pa.Super. 298, 307, 449 A.2d 697, 701 (1982). "The power to mold or more precisely amend a jury's verdict is merely a power to 'make the record accord with the facts, or to cause the verdict to speak the truth.'" *Id.* quoting Standard Pennsylvania Practice. (Rev.Ed.) Ch. 27, § 72. If the trial judge must assume facts which cannot be discerned from the verdict, then the verdict should not be molded. *May v. Pittsburgh Railways Co.,* 209 Pa.Super. 126, 129, 224 A.2d 770, 772 (1966).

By molding the verdict to accommodate the maximum work loss benefits available pursuant to the No-fault Act, the trial judge assumed that (1) the jury intended to compensate appellant for economic detriment, and (2) the jury awarded at least $15,000 in that regard. Neither of these assumptions can be legitimately surmised from a general verdict.

■ Appellee could have easily received the answers which the trial judge was forced to presume by submitting

points for charge requesting that the jury return special findings. If special findings would add to a logical and reasonable understanding of the issue, it is within the discretion of the trial judge to grant such a request. See *Willinger v. Mercy Catholic Medical Center*, 482 Pa. 441, 445–446 n. 4, 393 A.2d 1188, 1190 n. 4 (1978); *Walsh v. Pennsylvania Gas & Water Co.*, 303 Pa.Super. 52, 449 A.2d 573 (1982).

■ Herein, the attorneys for the parties and the trial judge discussed the work loss issue in the pre-trial conference; however, no agreement was included in the record, nor were special interrogatories submitted to the jury to ascertain the meaning of its verdict. By failing to raise this issue either through appropriate points for charge or objections voiced prior to the discharge of the jury, appellee waived his right to seek a cure to an inflated verdict through a motion to mold. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Lutz v. City of Scranton*, 140 Pa.Super. 139, 13 A.2d 121 (1940). Consequently, the exercise of the trial court's power to mold the verdict was inappropriate, and must be set aside.

We therefore vacate the amended verdict of $85,000.00 and reinstate the original verdict of $100,000.00.