**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| KAREN COWHER, ADMINISTRATRIX OF THE ESTATE OF JAMES L. COWHER, II, DECEASED, | : | No. 77 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court at No. 1111 EDA |
| Appellant | : | 2020 dated February 8, 2021, |
| | : | reconsideration denied April 16, |
| | : | 2021, Affirming in Part and Vacating |
| v. | : | in Part the Judgment of the Lehigh |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. 2018-C-0264, |
| SOBHAN KODALI, M.D., ST. LUKE'S | : | entered April 7, 2020 and |
| UNIVERSITY HEALTH NETWORK AND | : | Remanding for a new trial. |
| ST. LUKE'S CARDIOLOGY ASSOCIATES, | : | |
| | : | ARGUED: April 12, 2022 |
| Appellees | : | |

**OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED: September 29, 2022**

The jury in this medical malpractice case awarded the plaintiff Karen Cowher a lump sum amount of damages under the Survival Act, 42 Pa.C.S. §8302, and did not itemize the amount of pain and suffering damages or other components of its aggregate award. Thereafter, the Superior Court granted the defendants Dr. Sobhan Kodali, St. Luke's University Health Network, and St. Luke's Cardiology Associates (defendants) a new trial on survival damages based on their claim the admission of plaintiff's expert opinion testimony on pain and suffering was erroneous. The narrow question we address in this appeal is whether defendants waived their right to a new trial under the general verdict rule. This rule applies and mandates waiver when a general verdict rests upon

both valid and invalid grounds, and the litigant challenging the verdict failed to request a special verdict slip that would have clarified the basis for the verdict. As detailed below, these are the circumstances here. Accordingly, we hold defendants waived a new trial under the general verdict rule and reverse the Superior Court's order for a new trial.

## I.

In December of 2015, James L. Cowher, II (decedent), experienced chest pain that woke him from his sleep. He sought medical attention and underwent a stress echocardiogram test, the results of which were normal. Subsequently, on July 11, 2016, decedent saw his primary care doctor with complaints of ongoing chest pain, as well as shortness of breath, nausea, and sweating. The doctor performed an electrocardiogram test and ordered decedent's blood tested for troponin, a heart muscle enzyme released into the bloodstream when there is heart damage. The results of both tests were normal. Decedent's primary care doctor referred him to St. Luke's Cardiology Associates.

Dr. Kodali, a general cardiologist with St. Luke's Cardiology Associates, saw decedent on July 13, 2016. Decedent told Dr. Kodali that for the last six months he had been experiencing chest pains radiating to both arms, which were often associated with shortness of breath, dizziness, and tingling in his fingers. He also told the doctor he was running three miles every other day at a nine-minutes-per-mile pace without any symptoms. Dr. Kodali knew decedent had three risk factors for heart disease: a family history of premature coronary artery disease, high cholesterol, and obesity. Dr. Kodali concluded decedent's issues were not cardiac related, further evaluation was unnecessary, and his clinical picture was suggestive of anxiety/panic attacks.

On August 23, 2016, decedent was running in his neighborhood when he collapsed in front of a neighbor. He was subsequently transported to the hospital, where he was pronounced dead. He was forty-eight years old. An autopsy revealed he had severe atherosclerotic cardiovascular disease. The coroner reported his primary cause of death to be acute myocardial infarction.

On January 31, 2018, plaintiff, who is decedent's widow and the administrator of his estate, filed suit against defendants. Her complaint raised causes of action under the Wrongful Death Act and the Survival Act,[1] set to be tried before a jury. On October 28, 2019, defendants filed in the trial court a proposed verdict slip for the jury. They proposed the following question with respect to damages:

**Question 3:**

State the amount of damages sustained by Plaintiff as a result of the negligence of the health-care provider(s):

| | |
|---|---|
| Wrongful Death Action | $_____ |
| Survival Action | $_____ |

---

[1] We recently explained the distinction between wrongful death and survival actions as follows:

> A survival action under 42 Pa.C.S. §8302 is brought by the administrator or executor of a decedent's estate in order to recover damages for the decedent's pain and suffering, the loss of gross earning power from the time of injury to death, and the loss of earning power, less personal maintenance expenses, for the estimated working life span of the decedent. . . . By contrast, a wrongful death[ ] action pursuant to 42 Pa.C.S. §8301 is designed to compensate the spouse, children, and parents of the deceased for the pecuniary loss they have sustained as a result of the decedent's death, and damages may include the present value of services that would have been rendered to the family had the decedent lived, as well as funeral and medical expenses.

*McMichael v. McMichael*, 241 A.3d 582, 587-88 (Pa. 2020).

Proposed Verdict Slip of Defendants at 2 (filed 10/28/19).

On November 7, 2019, defendants filed a motion *in limine* to preclude plaintiff from introducing any evidence at trial regarding decedent's pain and suffering. Defendants argued "[t]estimony from the neighbors about pain and suffering would constitute a speculative lay opinion that is unreliable and not able to provide an appropriate basis for a jury to find there was pain and suffering[,]" and plaintiff's "sole expert does not offer a sufficient opinion on the subject and cannot testify outside the four corners of his expert report." Memorandum of Law in Support of the Motion in Limine of Defendants, Sobhan Kodali, M.D., St. Luke's University Health Network, and St. Luke's Cardiology Associates, to Preclude Plaintiff from Offering Any Evidence or Testimony Regarding Decedent's Pain and Suffering at 3 (filed 11/7/19). The trial court denied the motion.

At the pretrial conference on December 2, 2019, the parties and the trial court discussed the verdict slip. *See* N.T. 12/2/19 at 20-22. Defendants argued the damages question should have two blanks, one for the jurors to supply an amount for the wrongful death action and the other for them to provide an amount for the survival action, as indicated on their previously submitted verdict slip. The court agreed. *See id.* at 22 ("Mr. Zolfaghari: It's the Wrongful Death Act and the Survival Act. The Court: Right. . . .The Court: I think Mr. Zolfaghari is right, they just get the two, but that sounds right.").

At trial, the neighbor who witnessed decedent collapse while on a run, Diana Kanowski, testified she was walking her dogs when she saw decedent approaching her. She recounted he was walking at a "really slow" pace, which was atypical for him, and as she got closer to him, he went down on one knee. N.T. 12/3/19 at 74. Kanowski recalled she jokingly asked him whether he was taking a break, and he answered "No," and stated,

"I need help." *Id.* She testified decedent went down on two knees, then on to his side, and then finally on to his back and passed out. *See id.* at 74-78. She stated approximately three minutes elapsed between when she first saw decedent and when he lost consciousness, and during this time he was in pain, breathing heavily, and very distraught. *See id.*

Based on Kanowski's testimony, plaintiff's expert in cardiology, invasive cardiology, and internal medicine, Dr. Emil Hayek, offered the opinion decedent experienced pain and suffering prior to his death:

> Q. In addition to the other opinions that you've given today, do you have an opinion regarding whether Mr. Cowher experienced pain and suffering prior to his death?
>
> A. Yes.
>
> Q. And what is that opinion and what's it based on?
>
> A. That, based on the testimony I heard earlier this morning, I believe he did suffer conscious pain and suffering on that run on August 23rd when he realized that something was very wrong before he became unconscious.

N.T. 12/3/19 at 221.

Plaintiff's expert in actuarial economics, David Hopkins, opined the total economic loss stemming from decedent's death ranged from $1,070,145 to $2,700,498. *See* N.T. 12/4/19 at 59.

Upon the conclusion of the presentation of evidence, the trial court provided the parties with a copy of the verdict slip to review. Defendants suggested the reference to "the Plaintiff" in question 2, which concerned causation, should be replaced with the name of decedent, and the court and plaintiff agreed to the change. Otherwise, defendants voiced no objection to the slip. *See* N.T. 12/6/19 (Afternoon Session) at 55-56. The court

and parties then turned to discussion of the parties' proposed points for charge. Defendants agreed the jury should be instructed that past non-economic damages under the Survival Act include damages for pain and suffering. *See id.* at 74, 101.

On December 9, 2019, in its closing instructions to the jury, the trial court instructed the jurors there were four components of survival damages, specifically, pain and suffering, loss of life's pleasures, past lost earnings, and future lost earnings:

> So under the Survival Act, the Plaintiff is entitled to be compensated for the following damages. And there are three components to this as well. First, we're going to talk about past noneconomic damages.
>
> The Plaintiff is entitled to be awarded an amount that you believe will fairly and adequately compensate for the mental and physical pain, suffering and inconvenience and loss of life's pleasures that James Cowher endured from the moment of his injury to the moment of his death as a result of this incident. There are two items that make up a damage award for noneconomic loss: 1. Pain and suffering and 2. Loss of ability to enjoy the pleasures of life. First, the Plaintiff, on behalf of James Cowher's estate, is entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience and distress that you find that the Decedent – that James Cowher endured from the time of the injury until his death. Second, the Plaintiff on behalf of James Cowher's estate is entitled to be fairly and adequately compensated for James Cowher's loss of his ability to enjoy any of the pleasures of life as a result of the injury, as a result of the injuries from the time of those injuries until the time of his death.
>
> The second one is past lost earnings. The Plaintiff is entitled to be awarded the total net amount that James Cowher would have earned between the date of his death and today. Net earnings are decided as follows: You must first calculate the total amounts of the [sic] James Cowher's gross earnings, including fringe benefits, between the date of his death and today and from this amount you must deduct the amount of monetary contributions he would have made to his spouse during this period which you may have already awarded to the Plaintiff under the Wrongful Death Act.
>
> Now, the third component would be future loss of earnings. The Plaintiff is entitled to be awarded the value of the net amount that James's [sic] Cowher would have earned between today and the end of his life expectancy. Again, net earnings for this period are decided as follows: You

must first calculate the total amount of James Cowher's gross earnings between today and the end of his life expectancy and from this amount you must deduct the amount of monetary contributions he would have made to his family during this period which you have already, may have already awarded under the Wrongful Death Act. Your award to the Estate for total lost future net earnings, thus, represents the total net earnings over James Cowher's work life expectancy. Now to decide James Cowher's gross earnings between today and the end of his life expectancy, you must decide the total amount James Cowher would have earned during his life if he had not died.

In deciding the sum awarded for future loss of earnings you must consider the evidence that has been presented to you concerning the effect of productivity and inflation on the amount of this loss. You should consider the following – I'm going to give you about 6 or 7 things here: 1. James Cowher's age, educational and work experience; 2. His physical condition before the injury and death; 3. The work that James Cowher had done in the past and was capable of doing; 4. The work that James Cowher would have been doing in the future had the injury and death not occurred; 5. The effect increases in productivity have on the amount of this loss; 6. The effect inflation will have on the amount of this loss; and 7. Any other matters in evidence that you find to be relevant to this determination.

After you have decided James Cowher's loss of future earnings, this sum must be reduced to present value. You should consider and evaluate the expert testimony that you have heard, concerning reduction to present value based upon a reasonably secure fixed income investment.

N.T. 12/9/19 at 144-47.

The court also instructed the jurors to provide one lump sum amount of survival damages and a single lump sum amount of wrongful death damages:

The sum of money awarded for future loss of earnings shall be recorded as a single amount and you would take all of these items together, the three components and combine them, to the survival line. All right? So the two lines, three components under wrongful death that you would decide would be funneled into that line and the three on the survival would be funneled into the survival line.

*Id.* at 147-48.

Later that day, the jury returned a unanimous verdict in favor of plaintiff. The jury found Dr. Kodali's conduct fell below the applicable standard of medical care, and his

negligence was a factual cause of harm to decedent. *See id.* at 168. In addition, the jurors awarded plaintiff $2,457,000 in wrongful death damages and $3,833,000 in survival damages. *See id.* at 169. The damages were reflected in the verdict slip as follows:

**Question 3:**

State the amount of damages sustained by the Plaintiff as a result of the negligence of the Defendant, Sobhan Kodali, M.D.

| | |
|---|---|
| Wrongful Death | $   2,457,000 |
| Survival | $   3,833,000 |

Verdict Slip at 2 (filed 12/11/19). Defendants declined the court's offer to review the verdict slip but did request the jury be polled, and each juror confirmed they agreed with the verdict as stated. N.T. 12/9/19 at 169-70. Defendants did not ask the trial court to require the jury to itemize or otherwise clarify its damages awards.

Defendants appealed to the Superior Court. In pertinent part, defendants argued the admission of the expert opinion testimony of plaintiff's expert, Dr. Hayek, regarding decedent's pain and suffering was erroneous and required a new trial on damages. The panel agreed. Initially, the panel held "the testimony was nothing more than the expert's personal opinion and was not admissible expert testimony." *Cowher v. Kodali*, 249 A.3d 1134, at *7 (Pa. Super. 2021) (unpublished table decision). In addition, the panel held the error was prejudicial. Specifically, the panel reasoned expert testimony tends to be viewed by jurors as more credible than lay testimony. Also, the panel determined it was "clear from the verdict that the jury awarded [p]laintiff a high amount of pain and suffering damages, even though the evidence showed that [d]ecedent was conscious for only approximately three minutes." *Id.* In this regard, the panel noted "the highest amount of economic damages to which the [plaintiff's] economic expert testified was $2,700,498[,]"

and "[t]he jury's survival award was $3,833,000, $1,132,502 more than [p]laintiff's evidence of economic damages." *Id.*

The panel rejected plaintiff's argument prejudice could not be determined because "[d]efendants did not request an itemized verdict sheet" showing "the precise amount of the jury's pain and suffering award." *Id.* at *8. The panel reasoned that "[w]hile [the] absence of an itemization of damages can affect a court's ability to review a challenge to the amount that a jury awarded for a particular item of damages, . . . the issue here is whether the improper admission of evidence was prejudicial, not whether the amount of the pain and suffering award was excessive or unsupported." *Id.*, *citing Birth Center v. St. Paul Cos., Inc.*, 727 A.2d 1144, 1163 & n.16 (Pa. Super. 1999), *aff'd*, 787 A.2d 376 (Pa. 2001). "The standard for whether [an] error is prejudicial," the panel ruled, "is whether it **could** have affected the verdict[,] [and] [t]he ability to ascertain the precise amount of the jury's pain and suffering award is unnecessary to that analysis." *Id.* (emphasis in original). In the panel's view, "[t]he fact that the damages verdict that included pain and suffering was over $1 million more than [p]laintiff's expert's highest calculation of economic damages [wa]s sufficient for the [panel] to conclude that this verdict could have been affected, even if an actual amount of pain and suffering damages cannot be determined." *Id.* The panel concluded: "Given the fact that the jury awarded a high amount of pain and suffering damages for a brief period of time coupled with the undue weight that jurors are likely to give to expert testimony, we conclude the admission of [p]laintiff's cardiology expert's opinion on pain and suffering was prejudicial error." *Id.*

The panel further concluded that the trial court's prejudicial error in admitting the expert testimony on pain and suffering could not have affected the jury's liability verdict

or damages award for the wrongful death action, but rather could have only affected the damages awarded on the survival claim. Accordingly, the panel "vacate[d] only the damages judgment with respect to [p]laintiff's survival claim and remand[ed] for a new trial on damages limited to that claim." *Id.*[2]

## II.

This Court granted plaintiff's petition for allowance of appeal, limited to the following single issue as stated by plaintiff: "Where, as here, [defendants] failed to request an itemized verdict slip such that the jury would have been required to separately value the amount of each element of damages under Pennsylvania's Survival Act and where [defendants] failed to object to the general verdict slip given by the [t]rial [c]ourt to the jury

---

[2] In addition to their claim regarding Dr. Hayek, which was defendants' second issue on appeal, defendants raised three other issues in the Superior Court:

> 1. Whether the trial court erred and abused its discretion in failing to vacate the verdict where [p]laintiff failed to prove liability under her new, eleventh-hour cause of death theory by presenting expert testimony identifying a specific standard of care for treatment of cardiac arrythmia (as opposed to other coronary conditions), which [d]efendants breached and thus caused [p]laintiff's harm? . . .

> 3. Whether the trial court erred and abused its discretion in failing to vacate the Survival Act award where the record is devoid of evidence that decedent was conscious, able to feel pain or indeed felt pain immediately prior to death and, thus, any award for pain and suffering is against the weight of the evidence?

> 4. Whether the trial court erred and/or abused its discretion in denying [d]efendants' requests for a new trial on damages and/or remittitur, where the jury's Survival Act verdict award of $377,000 per minute (at best) for 2-3 minutes of pain and suffering is grossly excessive, unmoored from the record, and against the weight of the evidence?

*Cowher*, 249 A.3d 1134, at *3, *quoting* Appellants' Brief at 5-6. The Superior Court rejected the first issue on the merits. *See id.* at 3-5. With respect to defendants' third and fourth issues, the panel held that in light of its disposition of the claim concerning Dr. Hayek, "we need not and do not address these claims of error." *Id.* at *9.

to answer during deliberations, knowing that they intended to challenge any pain and suffering award rendered by the jury, whether those same [defendants] are estopped from requesting and receiving or have waived a new trial on damages?" *Cowher v. Kodali*, 265 A.3d 198 (Pa. 2021). "The issue of whether a party's conduct results in waiver of an issue is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." *Shiflett v. Lehigh Valley Health Network, Inc.*, 217 A.3d 225, 232 (Pa. 2019).

Plaintiff argues the general verdict rule announced by this Court in *Halper v. Jewish Family & Children's Service*, 963 A.2d 1282 (Pa. 2009), and endorsed in *Shiflett*, bars a new trial on damages under the Survival Act. She contends the general verdict rule "has as its centerpiece the logical and equitable principle that [if] a defendant fails to request a verdict slip include a special interrogatory and the resulting verdict against the defendant is unclear in some way, that lack of clarity cannot form the basis of the verdict loser's request for a new trial." Appellant's Brief at 46. "In other words," according to plaintiff, the fundamental principle undergirding the general verdict rule is that "the verdict loser cannot benefit from its own mistake or strategic decision." *Id.* She insists the notion that the "general verdict rule applies only to issues of liability decided by the jury is unsupported by the equitable reasoning that lies at the rule's core." *Id.* at 47.

Plaintiff relies on *Birth Center*, which involved an action by an insured against a professional liability insurer for bad faith refusal to settle a medical malpractice case. *See id.* at 48. There, in addressing defendant St. Paul's issue on cross-appeal that plaintiff Birth Center's claim for lost profits was too speculative, the Superior Court noted:

> [b]y failing to request a more structured verdict slip, St. Paul did not inform the trial court or the jury, at a time when it could easily have been corrected,

that St. Paul was interested in partitioning or apportioning the award for later challenge. Although not waiver in a technical sense, the absence of special interrogatories has thwarted our review of this issue.

*Birth Center*, 727 A.2d at 1163 n.16. Ultimately, the Superior Court saw "no reason to disturb the jury's determination[,]" and "reinstate[d] the full verdict in favor of Birth Center." *Id.* at 1163.

Plaintiff also relies on *Krock v. Chroust*, 478 A.2d 1376 (Pa. Super. 1984). *See* Appellant's Brief at 48-50. In that case, the trial court granted the defendant's motion to mold a jury award of $100,000 in a survival action by reducing it by $15,000, the maximum work loss benefits recoverable under the No-fault Motor Vehicle Insurance Act. In decreasing the verdict, "the trial judge assumed that (1) the jury intended to compensate [the plaintiff] for economic detriment, and (2) the jury awarded at least $15,000 in that regard." *Krock*, 478 A.2d at 1381. The Superior Court held that "[n]either of these assumptions can be legitimately surmised from a general verdict." *Id.* Further, the Superior Court ruled the defendant "could have easily received the answers which the trial judge was forced to presume by submitting points for charge requesting that the jury return special findings." *Id.* But because the defendant failed to raise the issue of the jury's specific finding regarding work loss, the Superior Court concluded the defendant "waived his right to seek a cure to an inflated verdict through a motion to mold." *Id.* Accordingly, the *Krock* Court vacated the amended verdict and reinstated the original verdict of $100,000. *See id.*

Alternatively, plaintiff asserts that even if the general verdict rule does not extend to this case, the Superior Court's order should be reversed and the trial court's judgment reinstated in full under "this Court's strict waiver jurisprudence." Appellant's Brief at 46.

She maintains defendants "fail[ed] to contemporaneously object" to the pain and suffering testimony of her neighbor and expert, "failed to request any form of clarifying questions on the verdict slip[,] . . . agreed to and did not object to the jury charge . . . instructing the jury on the components of damages, including pain and suffering[,]" and "did not ask the [t]rial [c]ourt to request that the jury clarify its verdict by itemizing the damages." *Id.* at 54-55. Under these circumstances, plaintiff argues, "[d]efendants either inadvertently waived their right to a new trial based upon the amount of the jury's alleged pain and suffering award or did so affirmatively." *Id.* at 55.[3]

Defendants respond that the Superior Court applied the correct test for assessing whether the erroneous admission of Dr. Hayek's expert opinion testimony on pain and suffering was prejudicial, namely whether the error could have affected the verdict. They assert "no Pennsylvania court has ever required a party to establish with mathematical certainty the effect improper inclusion of evidence had on a case." Appellees' Brief at 16. In addition, defendants argue the panel correctly concluded they were prejudiced by the erroneous expert opinion testimony under this "could-have-affected-the-verdict" standard.

---

[3] *Amicus* The Pennsylvania Association for Justice (Association) endorses plaintiff's position the Superior Court erred. Association argues defendants' failure to request a verdict sheet with special interrogatories on individualized damages prevented them from proving prejudice resulting from the erroneous expert testimony on pain and suffering. In the absence of special interrogatories, Association maintains, "[d]efendants cannot prove anything about the pain and suffering award – even whether an award was made for pain and suffering." Association's *Amicus* Brief at 2. Like plaintiff, Association contends reversal is supported by this Court's decisions in *Shiflett* and *Halper*, as well as the Superior Court's opinion in *Birth Center*. *See id.* at 2-4. Association posits "'waiver' does not necessarily describe [d]efendants' failure in this case." *Id.* at 4. Rather than failing to preserve an error for appellate review, Association asserts, defendants failed to take the necessary steps to demonstrate prejudice justifying a new trial. Association alleges that having made the choice to not seek special interrogatories for each element of Survival Act damages, defendants must now "live with" the consequences, and concluding otherwise would be tantamount to letting them "have their cake and eat it, too." *Id.* at 6.

In this respect, they note juries usually place great weight on expert testimony, plaintiff's counsel referenced the testimony in his closing argument, and the testimony was unrebutted. *See id.* at 17-20. They also emphasize the total damages awarded on plaintiff's survival action exceeded her expert's highest estimate of economic harm by $1,133,000. According to defendants, "the magnitude of the award, returned shortly after [p]laintiff's counsel's closing where he emphasized Dr. Hayek's testimony on pain and suffering, firmly establishes the effect his testimony had on the jury." *Id.* at 22. Defendants insist they did not waive their right to claim prejudice because they "vehemently objected to the expert testimony pre-trial but, after a lengthy sidebar discussion . . . , the trial court overruled defense counsel's objections." *Id.* Indeed, they maintain plaintiff's waiver claim "has itself been waived" because it was only first raised in her petition for allowance of appeal to this Court. *Id.* at 23.

Defendants dispute plaintiff's contention the general verdict rule applies to this case. In their view, *Shiflett* and *Halper* "have no relevance here" because they "involved situations where plaintiffs asserted separate theories or claims, one of which was later found to be invalid, [and] the respective juries returned lump sum verdicts." *Id.* at 24. Here, on the other hand, defendants argue, "the jury awarded two separate verdicts (one for Wrongful Death and one under the Survival Act) and the Superior Court did not find that one of two different theories should not have been submitted to the jury." *Id.* at 25. Defendants see "[n]othing in *Shiflett* or *Halper* suggest[ing] that their holdings apply with equal force to cases involving erroneous evidentiary rulings[.]" *Id.* Defendants argue that since "[p]laintiff has argued that admission of Dr. Hayek's testimony was 'harmless error' in light of Mrs. Kanowski's testimony[,] . . . as a practical matter, even if the wages and

pain and suffering portions of the Survival Act verdict had been separately awarded, [p]laintiff likely would have argued that [d]efendants waived the issue unless they were able to prove which portion of the pain and suffering award was based on the expert's (as opposed to the neighbor's) testimony." *Id.* (emphasis omitted).

Defendants further contend Pennsylvania's Suggested Standard Civil Jury Instructions call for damages under the Wrongful Death Act and Survival Act to be awarded in two lump-sum amounts. *See id.* at 26, *citing* Pa. Suggested Standard Jury Instructions (Civil) 7.190, 14.170. And, they allege this Court has in fact "required wrongful death and survival awards to be rendered in lump sum amounts." *Id.*, *citing Ferne v. Chadderton*, 69 A.2d 104 (Pa. 1949). Defendants assert plaintiff's reliance on *Birth Center* is "misplaced" because that case "did not involve wrongful death or survival claims, and did not require that damages for such claims be itemized." *Id.* at 28. Defendants insist *Birth Center*, as well as the Superior Court's earlier decision in *Krock*, are distinguishable because unlike in those cases, the disputed jury award in this case is readily discernible from the record.

Defendants also raise several policy objections to plaintiff's position they forfeited their right to a new trial on survival damages. First, they maintain the rule urged by plaintiff would apply to defendants only, which would be fundamentally unfair and arbitrary and capricious, and would implicate equal protection concerns. Second, defendants assert plaintiff's proposed rule would apply only where improper evidence has been introduced, not excluded. Third, defendants argue, denying them a new trial because they did not request itemization of the survival damages would "effect a retroactive change in the law" in contravention of their due process rights. *Id.* at 31.

Finally, defendants argue in the alternative that if this Court decides to adopt a rule of estoppel or waiver in this context, it should do so prospectively only. They maintain applying the "new" rule retroactively would not serve its purpose, there has been substantial reliance on the "old" rule, and retroactive application of the "new" rule to their case "will require [them] to lose their property interest in having almost $4 million of the verdict set aside." *Id.* at 34.[4]

---

[4] *Amici* The American Medical Association and The Pennsylvania Medical Society (AMA/PMS) support defendants' arguments for affirmance. AMA/PMS contend that "as in *Brady v. Urbas*, 111 A.3d 1155, 1164 (Pa. 2015), this Court should continue to hold that improper expert testimony requires a new trial whenever it reasonably appears that the testimony influenced the verdict." AMA/PMS's *Amici* Brief at 9. They assert this prejudice standard is satisfied here because the maximum amount of economic loss estimated by plaintiff's own expert was $2,700,498, yet the total survival award was $3,833,000. Under these circumstances, and given that pain and suffering was the "only other item of survival damages," *amici* claim it is "obvious, logical, and not at all speculative" to conclude "$1.1 million is the minimum the jury awarded for pain and suffering." *Id.* at 11 (emphasis omitted). On the other hand, they maintain, it is "clearly unreasonable" to conclude the jury ignored plaintiff's economic expert and awarded damages in excess of his high-end estimate. *Id.* They insist this Court rejected such an argument in *Kiser v. Schulte*, 648 A.2d 1 (Pa. 1994), which acknowledged "a jury is free to believe or disbelieve opinion evidence presented by an expert witness[,]" but also noted "a jury's verdict must bear a reasonable resemblance to the proven damages." AMA/PMS's *Amici* Brief at 11, *quoting Kiser*, 648 A.2d at 5-6 (emphasis omitted). AMA/PMS argue plaintiff waived reliance on the general verdict rule by failing to reference it below, and the rule is inapplicable in any event because this case does not involve a scenario of two separate theories of relief, one valid and the other invalid, and a lump sum verdict that makes it impossible to determine the jury awarded any damages on the invalid theory. Echoing defendants, *amici* argue "settled Pennsylvania practice and legal authorities" provide for wrongful death and survival awards in lump-sum amounts and therefore, "even if this Court ultimately determines that survival awards must be itemized in certain circumstances, the requirement should be deemed prospective so the lower courts and bar are given fair notice and the jury instruction committee can modify the standard instructions and verdict sheet." *Id.* at 16, 18. *Amici* further assert *Birth Center* is inapposite because it did not involve wrongful death or survival claims, and "rejected the claim that appellant waived its challenge to a particular item of damages[.]" *Id.* at 19 (emphasis omitted). They also argue *Krock* is distinguishable because the jury's award of damages for pain and suffering here "is easily discernible and need not be assumed." *Id.* at 20. Finally, AMA/PMS contend plaintiff's waiver argument is itself waived. In any

In reply, plaintiff emphasizes this Court's review is limited to the single issue on which it granted allowance of appeal, and does not extend to consideration of "'why' the jury awarded any particular amount to" plaintiff. Appellant's Reply Brief at 15. In addition, she argues the jury's verdict here was not excessive in light of *Tulewicz v. Southeastern Pennsylvania Transportation Authority*, 606 A.2d 425 (Pa. 1991), *on reargument*, 606 A.2d 427 (Pa. 1992), where this Court held a verdict of $2,500,000 under the Wrongful Death Act was not excessive notwithstanding "[t]he plaintiff's expert testified that $356,929.00 was the value of lost earning capacity, past and future home services and the loss of guidance, tutelage and general upbringing of her daughter." *Tulewicz*, 606 A.2d at 426. *See* Appellant's Reply Brief at 18-19. Lastly, plaintiff posits a "third option" to either affirming or reversing the Superior Court's remand for a new trial on survival damages. In particular, she claims "[d]efendants concede that fully $2,700,000 worth of the survival award was based upon the economic damages component of that award." *Id.* at 21. Since this portion of the survival award is "undisputed[,]" plaintiff argues, "this Court could confirm a portion of the [t]rial [c]ourt's judgment totaling $5,157,000 [the $2,457,000 awarded under the Wrongful Death Act plus the $2,700,000 of economic damages under the Survival Act,] and remand for a new trial [on] the total amount of damages attributable to Mr. Cowher's pain and suffering component of the Survival Act claim." *Id.* at 22.

---

case, they argue, since "the prevailing authorities do not clearly contain any requirement of itemized survival awards[,]" and "actually require or at least strongly suggest the opposite[,]" it would be "improper and unfair" to enforce waiver here. *Id.* at 22 (emphasis omitted). *Amici* emphasize defendants objected to Dr. Hayek's testimony before and during trial, and "the facts of this case do not warrant the heavy consequences of waiver." *Id.* at 25.

**III.**

Upon careful consideration of the arguments of the parties and *amici*, the governing law, and the record, we hold defendants waived a new trial on survival damages under the general verdict rule. This rule provides: "'when the jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed on appeal.'" *Shiflett*, 217 A.3d at 234, *quoting Halper*, 963 A.2d at 1289. Elaborating on the rule, we have stated: "'a defendant who fails to request a special verdict form in a civil case will be barred on appeal from complaining that the jury may have relied on a factual theory unsupported by the evidence when there was sufficient evidence to support another theory properly before the jury.'" *Id.*, *quoting Halper*, 963 A.2d at 1289. Thus, under the rule, when a litigant fails to request a special verdict slip that would have clarified the basis for a general verdict, and the verdict rests upon valid grounds, "the right to a new trial is waived." *Id.* at 234 n.8. The rule "promote[s] judicial efficiency" by preventing needless retrials as well as "fairness" by keeping a litigant from benefiting from its own omission in failing to request a special verdict slip. *Id.* The rule has been an explicit feature of Pennsylvania law since *Halper* was decided in 2009.[5]

---

[5] Indeed, as we noted in *Shiflett*, *see id.* at 234 n.7, the rule has roots in Superior Court precedent predating *Halper*. *See Connelly Containers, Inc. v. Pa. R.R.*, 292 A.2d 528, 532-33 (Pa. Super. 1972) ("In view of appellant's failure to request a special verdict or interrogatories of the jurors, the apparent relative strength of the two other theories presented to the jury, and fact that appellee did not argue the 'rivet' theory to the jury, we hold that the trial judge's charge was not the 'basic, fundamental and prejudicial error' which would require the reversal of the judgment below."), *quoting Gilmore v. Marsh*, 227 A.2d 881, 882 (Pa. 1967); *Krock*, 478 A.2d at 1381 ("Herein, the attorneys for the parties and the trial judge discussed the work loss issue in the pre-trial conference; however, no agreement was included in the record, nor were special interrogatories submitted to the

Here, defendants knew before the trial even started that the expert opinion testimony of plaintiff's expert, Dr. Hayek, regarding pain and suffering under the Survival Act was a potential issue on appeal. They filed a pretrial motion *in limine* to preclude the testimony, which the trial court denied. Nonetheless, defendants never requested in the trial court, either before trial, at trial, or post-verdict prior to the jury's dismissal, a special interrogatory itemizing the Survival Act damages. In fact, prior to trial, defendants filed a proposed verdict slip with a suggested damages question asking the jurors to supply a single lump sum amount of damages for plaintiff's survival action. *See* Proposed Verdict Slip of Defendants at 2. In other words, defendants' own proposed verdict slip did not seek itemization of the damages under the survival claim. Indeed, the proposed damages question in defendants' suggested verdict slip was materially identical to the damages question the trial court actually used in the verdict slip it provided to the jury at trial. Similarly, when the parties and trial court discussed the verdict slip at the pretrial conference, defendants affirmatively argued the form should have one blank for the jurors to award a single lump sum amount of survival damages. *See* N.T. 12/2/19 at 22. Later at trial, when the court provided the parties with a copy of the verdict slip to review, defendants voiced no objection to the form calling for a lump sum award of damages under the Survival Act. *See* N.T. 12/6/19 (Afternoon Session) at 55-56. Thereafter, the

---

jury to ascertain the meaning of its verdict. By failing to raise this issue either through appropriate points for charge or objections voiced prior to the discharge of the jury, appellee waived his right to seek a cure to an inflated verdict through a motion to mold."); *Birth Center*, 727 A.2d at 1163 n.16 ("By failing to request a more structured verdict slip, St. Paul did not inform the trial court or the jury, at a time when it could easily have been corrected, that St. Paul was interested in partitioning or apportioning the award for later challenge. Although not waiver in a technical sense, the absence of special interrogatories has thwarted our review of this issue.").

trial court instructed the jury, without objection by defendants, to award a single amount of survival damages. *See* N.T. 12/9/19 at 147. When the jurors ultimately returned a lump sum award of Survival Act damages, defendants did not request itemization or clarification of the verdict prior to the discharge of the jury. *See id.* at 169-71. In sum, despite knowing before trial even commenced that the propriety of Dr. Hayek's testimony was a possible appellate issue, and despite having multiple opportunities to request a special verdict slip breaking down the amount of pain and suffering damages, defendants never once requested a special verdict form in the trial court, and in fact affirmatively sought a lump sum award of survival damages.

Moreover, putting to one side and not considering Dr. Hayek's testimony, the jury's general damages verdict under the Survival Act is nonetheless supported by other valid evidence. The trial court instructed the jurors there were four distinct components of survival damages: pain and suffering, loss of ability to enjoy the pleasures of life, past lost earnings, and future lost earnings. *See id.* at 144-46. There was competent evidence supporting the latter three components of survival damages. Thus, the jury's survival award may be based entirely on one or more of these valid grounds. Indeed, plaintiff's counsel specifically argued in summation the decedent should be "fully and fairly compensate[d]" for the "loss of life's pleasures." *Id.* at 78. Counsel told the jurors "there's no measuring stick for its value. That's up to you." *Id.* Similarly, while the "most aggressive" estimate offered by the plaintiff's expert regarding the decedent's lost earnings was $2,700,498, N.T. 12/4/19 at 59, plaintiff's counsel urged the jury to "come to some number that you believe would be the appropriate number to award[,]" and emphasized "we have no way to know for certain what [decedent] would have earned or

what he would have done 5 years from now, 10, 15, 20." N.T. 12/9/19 at 72. Also, the court instructed the jury, consistently with Pennsylvania law, *see Kiser*, 648 A.2d at 5-6, that they were not bound by expert opinion testimony, *see* N.T. 12/9/19 at 128 ("You are not bound by an expert's opinion merely because he or she is an expert. You may accept it or reject it as in the case of other witnesses. Give it the weight, if any, to which you deem it entitled."). Given this context, the general survival damages verdict returned by the jury is supportable solely on the basis of the proper evidence of loss of life's pleasures and/or lost earnings.

Furthermore, applying the general verdict rule to these facts serves the ends of judicial efficiency and fairness undergirding the rule. A special verdict slip in this case asking the jury to itemize the pain and suffering damages and other component parts of the survival award would have clarified the specific amount of damages attributable to Dr. Hayek's testimony, obviating the need for the new trial on the totality of damages under the Survival Act ordered by the Superior Court. On the other hand, ordering a new trial on survival damages would grant defendants the benefit of a new trial on the full sum of the award, and a second bite at the apple to potentially reduce their payment of damages, based on their own failure to request a special verdict form. And, further tipping the balance of the equities against defendants is the fact this failure occurred with their full knowledge Dr. Hayek's testimony was likely to be an issue on appeal.

Under these circumstances, where defendants knew prior to trial the propriety of Dr. Hayek's testimony was a possible appellate issue but declined to take advantage of multiple opportunities to request a special verdict slip clarifying the impact of this evidence, where the survival damages verdict was supported by other valid evidentiary

grounds properly before the jury, and where efficiency and fairness concerns support a finding of waiver, we conclude defendants waived their claim to a new trial under the general verdict rule. We will not simply presume the verdict rested on an improper basis and remand for a retrial burdening plaintiff and expending finite judicial resources where defendants had it readily within their power to clarify the matter via a special verdict slip.

The arguments presented against application of the general verdict rule leave us unpersuaded. Defendants' contentions they were clearly prejudiced by Dr. Hayek's pain and suffering testimony miss the mark. The question before us is not whether the admission of the testimony was prejudicial error. Rather, we are deciding whether defendants waived their challenge to the survival award under the general verdict rule by not requesting a special verdict slip. Assuming the admission of Dr. Hayek's testimony was prejudicial error, this would not resolve the distinct waiver issue. A non-harmless error can nevertheless be waived.

We disagree with defendants and their *amici* that plaintiff waived reliance on the general verdict rule by not raising it in the trial court or the Superior Court and raising it for the first time in her allocatur petition to this Court. Plaintiff was not the moving party in the trial court. It was defendants who filed the pretrial motion *in limine* to preclude evidence of pain and suffering. Moreover, while plaintiff is the appellant in this Court, she was the appellee in the Superior Court. Under these circumstances, plaintiff did not waive the general verdict rule. *See In re Vencil*, 152 A.3d 235, 241 n.6 (Pa. 2017) (appellant did not waive arguments where it "was the non-moving party before the trial court and was an appellee in the Superior Court"); *see also Commonwealth v. Shaffer*, 209 A.3d 957, 971-72 (Pa. 2019) ("[T]hroughout this litigation, the Commonwealth was the

nonmoving party or appellee and had no obligation to preserve the issue of whether the private search doctrine applied.").

Also unconvincing are defendants' and their *amici*'s arguments this case is distinguishable from *Halper* and *Shiflett* because those cases involved an invalid theory of liability whereas this one involves an erroneous evidentiary ruling. We see nothing in *Halper* and *Shiflett* excluding the present scenario from the general verdict rule. To the contrary, we defined the rule broadly in those cases: "when the jury returns a general verdict involving two or more **issues** and its verdict is supported as to at least one **issue**, the verdict will not be reversed on appeal." *Shiflett*, 217 A.3d at 234; *Halper*, 963 A.2d at 1289 (emphasis added). The general term "issue" encompasses the erroneous introduction of evidence just as it includes an invalid liability theory, and much else besides. Here, as in *Halper* and *Shiflett*, there was a general verdict supported by both valid and allegedly invalid grounds, and the party challenging the verdict failed to request a special verdict slip clarifying whether the verdict in fact rested on the claimed improper basis. These facts in common require a consistent result: waiver under the general verdict rule.

We further reject defendants' suggestion that because the neighbor Kanowski also testified regarding pain and suffering, a special verdict slip itemizing pain and suffering damages – and the other permissible survival damages – would not have clarified that the jury's survival award was based on Dr. Hayek's opinion testimony. As defendants themselves emphasize, expert opinion testimony typically carries special weight with the jury, Dr. Hayek's testimony about pain and suffering went unrebutted, and plaintiff's counsel emphasized the expert's testimony in summation; the jury's specification of an

amount for pain and suffering in response to a special interrogatory would have clearly indicated the expert testimony impacted the verdict, as unchallenged expert testimony would surely have played at least some role in any hypothetical pain and suffering award. As it stands, however, in the absence of a request for a special verdict slip, it is unclear even whether the jury awarded pain and suffering damages in response to Question 3, and therefore it is nothing more than rank speculation to assume the general verdict was premised on Dr. Hayek's testimony, as opposed to being exclusively based on the proper evidence of loss of life's pleasures and/or lost earnings.[6]

---

[6] Justice Mundy "disagree[s]" that plaintiff's counsel emphasized Dr. Hayek's testimony on pain and suffering in his closing argument. Concurring and Dissenting Opinion at 2 n.1. Yet, the trial transcript indicates counsel did just that by stating:

> The law says that you should award an amount that will fully and fairly compensate him for any conscious pain and suffering and loss of life's pleasures that you determined he suffered as a result of the [d]efendants' negligence up to an including the time of his death. So what is the evidence on this? It came mostly from Diana Kanowski, who was our first witness – it seems like so long ago – and **Dr. Hayek**.

N.T. 12/9/19, at 78-79 (emphasis added). In addition, Justice Mundy writes, "[t]o the extent the Majority suggests that expert testimony is needed to award pain and suffering damages, I disagree." Concurring and Dissenting Opinion at 2. We are not so suggesting. Our determination that, under the particular circumstances of this case, an itemized jury award of pain and suffering damages would have demonstrated Dr. Hayek's testimony impacted the jury's verdict does not imply expert testimony is always required for recovery of such damages. Justice Mundy further argues that "[b]ecause [defendants] waived a new trial by failing to request a special verdict form," our discussion of how a special verdict slip would have clarified the effect of Dr. Hayek's expert testimony is "obiter dicta" that she "cannot join." *Id.* at 2. But, waiver under the general verdict rule requires that a special verdict slip would have clarified the basis for a general verdict. *See Shiflett*, 217 A.3d at 236 ("Importantly, in both cases a special interrogatory would have provided the necessary clarification, and because the defendant failed to request that a clarifying special interrogatory be added to the verdict sheet that would have obviated the need for a new trial, the verdict will stand. As we indicated in *Halper*, we will not shift to a plaintiff the burden of a new trial based upon a defendant's failure to request a clarifying special interrogatory."). Hence, our consideration of the clarification question, and conclusion that a specified award for pain and suffering would have clarified the evidentiary impact

Defendants' reliance on Pennsylvania's Suggested Standard Civil Jury Instructions is misplaced. The suggested instructions "are not binding[.]" *Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014). "[R]ather, as their title suggests, the instructions are guides only." *Id.* Precedential decisions by this Court, on the other hand, are mandatory and controlling. *See Commonwealth v. H.D.*, 247 A.3d 1062, 1064 n.1 (Pa. 2021) ("Of course, a court would be bound by language included in the suggested instructions that is made mandatory by a precedential judicial decision."). Our binding decisions in *Halper* and *Shiflett* call for waiver here, irrespective of what the suggested instructions propose.

To be sure, our precedents do not proscribe the itemization of survival damages, as defendants contend. In the *Ferne* case cited by defendants, the Court held:

> There is another reason why these verdicts cannot be allowed to stand. The trial judge charged that the widow was entitled to certain damages and the daughter was entitled to certain damages, with the result that the jury assessed a specific sum in favor of the one and a specific sum in favor of the other. The Death Statute . . . provides that the sum recovered in the action shall go to the parties beneficially entitled thereto in the proportions in which they would take the personal estate of the decedent in case of intestacy; therefore the award made by the jury in such actions is not to be apportioned by them among the beneficiaries; their award must be merely a lump sum which is then distributable as prescribed by the statute.

*Ferne*, 69 A.2d at 107. Hence, *Ferne* is inapposite for two reasons. First, it called for a lump sum award under the Wrongful Death Act, not the Survival Act, and the latter statute is at issue here. Second, *Ferne* disapproved apportionment between beneficiaries, not

---

of Dr. Hayek's expert opinion notwithstanding the neighbor's lay testimony, are necessary to our waiver holding. *See BouSamra v. Excela Health*, 210 A.3d 967, 967 n.5 (Pa. 2019) ("Dicta is generally regarded as information in an opinion which is 'not necessary to the determination of the case.'"), *quoting In re L.J.*, 79 A.3d 1073, 1079 (Pa. 2013).

itemization of the components of a damage award, and it is the absence of itemization which gave rise to the waiver in this case.

Nor are we moved by the efforts of defendants and their *amici* to distinguish the Superior Court's persuasive decisions in *Birth Center* and *Krock*. While *Birth Center* may not have involved an action under the Survival Act, the opinion squarely declines to disturb a jury award based on the failure to request a more structured verdict slip. And, although *Birth Center* stopped short of finding "waiver in a technical sense," the Superior Court nonetheless concluded "the absence of special interrogatories . . . thwarted" its review. *Birth Center*, 727 A.2d at 1163 n.16. Moreover, we disagree with defendants and *amici* that unlike the opaque jury awards in *Birth Center* and *Krock*, the amount of pain and suffering damages here is readily deducible from the record. To the contrary, as discussed, the jury was instructed that damages under the Survival Act included four components, of which pain and suffering was but one. The jury was told that in addition to pain and suffering, survival damages also included loss of life's pleasures, past lost earnings, and future lost earnings. The jurors were also instructed they were not bound by the expert testimony regarding economic damages. Additionally, plaintiff argued for damages as to each of the four components of survival damages and urged the jurors to make their own, independent decisions regarding the amounts of damages associated with the loss of life's pleasures and lost earnings. Given these circumstances, whether and to what extent the jury awarded pain and suffering damages is not at all clear or self-evident. In fact, it is entirely possible the jury awarded no pain and suffering damages at all. The reason we don't know, of course, is that the jury answered a general verdict slip.

Respecting defendants' policy arguments against application of the general verdict rule, we again emphasize the rules promote the beneficial policy goals of judicial economy and fair treatment of the parties. *See Shiflett*, 217 A.3d at 234 n.8. More fundamentally, precedent guides our result. We are not deciding this case on a blank slate, and any policy concerns must give way to our established case law dictating a finding of waiver.

Lastly, we reject the request to apply the general verdict rule to the present facts on a prospective basis only. We rejected a similar argument in *Shiflett*. There, the dissent contended the Court's decision "constitute[d] an expansion of the *Halper* precept, and that as a result, given the lack of advance notice, it should only be applied prospectively." *Id.* at 236 n.11 (internal quotation marks omitted). The majority disagreed, concluding our decision could "not in any respect be described as an expansion of the general verdict rule as adopted in *Halper*" but rather constituted "a straightforward application of *Halper*'s general verdict rule[.]" *Id.* The Court noted the defendant "had clear advance notice of the general verdict rule, as *Halper* was decided seven years prior to the time of trial in the present case." *Id.* Like *Shiflett*, our decision here reflects a straightforward application of the general verdict rule, as defendants failed to request a special verdict slip clarifying the basis for a general verdict, and the verdict otherwise rests upon valid grounds. Defendants not only had ample advance notice of *Halper*, but *Shiflett* too was decided prior to the trial here. For these reasons, we follow the normal course and apply today's holding to the case and parties before us.

**IV.**

In sum, because application of the general verdict rule to this case is consistent with the letter and spirit of the rule as it has been construed by this Court for over thirteen

years, we hold defendants waived a new trial on survival damages under the rule. Consequently, the order of the Superior Court is reversed, and the case is remanded to that court for consideration of the appellate issues it did not address.[7]

Chief Justice Baer and Justices Todd, Donohue, Wecht and Brobson join the opinion.

Justice Mundy files a concurring and dissenting opinion.

---

[7] In addressing the remaining issues, the Superior Court shall consider whether these claims are also waived by defendants' failure to request a special verdict slip itemizing the amount of pain and suffering damages.